

**NUMBER 13-08-00169-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**EDUARDO GRACIA BAZAN,**                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Eduardo Gracia Bazan challenges his conviction for theft by a public servant of property valued $1,500 or more but less than $20,000. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A), (f) (Vernon Supp. 2009). By seven issues, Bazan complains that: (1) the trial court lacked jurisdiction over his case because the crime was not

committed within the territorial jurisdiction of the State of Texas; (2) the trial court lacked jurisdiction because he was indicted previously in a different district court and local rules required this case to be filed where the original indictment was filed; (3-5) trial counsel rendered ineffective assistance by failing to consolidate all criminal cases against Bazan into the first-filed case, pursue and obtain a plea bargain, and communicate plea bargain offers to the defendant; (6) the trial court erred in entering judgment against Bazan because there was no evidence that any alleged theft was committed in defendant's capacity as a public servant; and (7) the trial court erred in entering judgment against Bazan because his right to confront and cross-examine adverse witnesses was violated when statements of a deceased person were allowed into evidence. We affirm.

## I. BACKGROUND

In October 2001, Bazan, a Hidalgo County Constable, applied for a certificate of title for a Volkswagen Jetta with the county tax assessor-collector's office (tax office). When the staff at the tax office ran standard checks on the vehicle, the system returned no information. This raised suspicions with the tax office fraud investigators, and the tax office impounded the Jetta. Further investigation revealed that the Jetta had been stolen in Mexico City in 1999. Bazan was eventually indicted in the 92nd District Court of Hidalgo County for:

> acquiring and otherwise exercising control over . . . one Volkswagen motor vehicle, of the value of $1,500 or more but less than $20,000 . . . without the effective consent of the owner, namely by deception, and with intent to deprive the owner of the property, and the defendant was then and there a public servant, namely, a Hidalgo County Constable, and such property appropriated by the defendant had theretofore come into his custody and possession and control by virtue of his status as such a public servant . . . .

2

The case proceeded to a jury trial. Precisely how the vehicle came into Bazan's possession was the subject of voluminous testimony at trial.[1]

At the conclusion of the trial, the jury found Bazan guilty of theft by a public servant. *See id.* The trial court sentenced Bazan to seven years' confinement, with the punishment suspended and probated over seven years, and assessed a $3,000 fine. Bazan filed a motion for new trial. After a hearing, the trial court denied the motion. This appeal ensued.

## II. DISCUSSION

### A. Territorial Jurisdiction

By his first issue, Bazan complains that the State was without jurisdiction to prosecute his case. The penal code provides that "[t]his state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if . . . either the conduct or a result that is an element of the offense occurs inside this state." *See id.* § 1.04(a)(1) (Vernon 2003); *Salazar v. State*, 711 S.W.2d 720, 725 (Tex. App.–Corpus Christi 1986, pet. ref'd). The elements of theft in this case are that the defendant: (1) unlawfully appropriated property valued at $1,500 or more but less than $20,000; (2) with intent to deprive the owner of the property; and (3) was, at the time of the theft, a public servant who came into possession of the property by virtue

---

[1] Bazan initially represented that the Jetta was an abandoned vehicle and that, as constable, he impounded the vehicle at De La Rosa Collision Wrecker Service before holding an auction and buying the Jetta at the auction. The tax office fraud investigators testified that Bazan attempted to file two documents with the office—a title application and an auction receipt—and that each purported to confirm this story. The documents certified that the owner of the Jetta had been properly notified prior to the auction. One of the investigators testified that Bazan, in fact, had never attempted to contact the owner of the Jetta.

The investigator then stated that he was subsequently approached by a friend of Bazan's who claimed that he had sold the Jetta to Bazan. This story was called into question by the testimony of the Hidalgo County Tax Assessor-Collector, who stated that he learned that Bazan had bought the Jetta from drug dealers who took the car from a person who had failed to pay for his drugs.

of his status as a public servant. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A), (f); *see also Mendoza v. State*, No. 13-03-00755-CR, 2005 WL 2476211, at *1 (Tex. App.–Corpus Christi Oct. 6, 2005, no pet.) (mem. op., not designated for publication).

Here, Bazan contends that any theft committed in this case occurred in Mexico, outside the territorial jurisdiction of Texas, and because of that, the State lacked authority to pursue his case in Texas. We disagree. The fact that the car was or was not stolen in Mexico is irrelevant to the charges against Bazan. Bazan's indictment was based on allegations that he used his position as a constable to gain title to a vehicle that he knew or should have known was stolen. Thus, the alleged criminal conduct of Bazan—that he unlawfully appropriated a vehicle valued at approximately $9,500 by falsifying title documents in an attempt to "wash" the title of a stolen Mexican vehicle—occurred in Texas, and the trial court had jurisdiction to hear the case. *See* TEX. PENAL CODE ANN. §§ 1.04(a)(1), 31.03(a), (e)(4)(A), (f). Bazan's first issue is overruled.

## B. Jurisdiction and the Local Rules

In his second issue, Bazan challenges the jurisdiction of the 92nd District Court of Hidalgo County over his case. Specifically, Bazan argues that because he was first indicted for the offense in the 93rd District Court, local rules required all subsequent cases against him to be filed in the court of his original indictment thereby divesting the 92nd District Court of any authority over this case. *See* HIDALGO COUNTY DIST. CTS. LOC. R. 1.2.7 ("If a case is on the docket of a court by any manner other than as prescribed by these rules, the Presiding Judge shall transfer the case to the proper court."), 7.4 ("When several indictments are returned against the same defendant, the court in which the first indictment

4

is filed shall receive all such indictments."). Although Bazan raises a jurisdictional argument, he complains of the local rules, which are adopted for administrative purposes and do not necessarily create jurisdiction in any certain court. *See* TEX. GOV'T CODE ANN. §§ 24.304 (Vernon 2004) (allowing judges in counties where there are two or more district courts to "adopt rules governing the filing and numbering of cases . . . and the distribution of the work of the courts . . . [to enable] the orderly dispatch of the business of the courts"), 74.093 (Vernon Supp. 2009) (providing for the adoption of "local rules of administration" to govern the "assignment, docketing, transfer, and hearing of all cases, *subject to jurisdictional limitations*" of the district courts) (emphasis added); *see also Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.–Dallas 2005, pet. ref'd) (recognizing the authority of district judges to adopt rules governing the administration of multiple district courts). Rather, as conceded by Bazan, the 92nd District Court is vested by the Texas Constitution with jurisdiction over felony cases in Hidalgo County. *See* TEX. CONST. art. V, § 8; *Skillern v. State*, 890 S.W.2d 849, 859 (Tex. App.–Austin 1994, pet. ref'd) (citing *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981)). We refuse to construe the local rules of administration, *see* TEX. GOV'T CODE ANN. §§ 24.304, 74.093, in such a way that they divest the trial court of its constitutionally-created authority to preside over felony indictments. *See* TEX. CONST. art. V, § 8. Bazan's second issue is overruled.

## C. Ineffective Assistance of Counsel

By his third, fourth, and fifth issues, Bazan argues that his trial counsel's assistance was ineffective.

### 1. Standard of Review

To establish a claim for ineffective assistance of counsel, the appellant must show (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there was a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 664, 668 (1984); *Mallett v. State*, 65 S.W.3d 59, 62 (Tex. Crim. App. 2001). Our review of counsel's representation is deferential, and we presume that counsel gave his client professional assistance. *Mallett*, 65 S.W.3d at 62 (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). The appellant bears the burden of proof to show by a preponderance of evidence that his counsel's performance was below that which is objectively reasonable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Generally, the trial record will not be sufficient to establish an ineffective assistance of counsel claim. *Id.* at 813-14; *Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). This is true because normally a silent record cannot rebut the presumption that counsel's performance was the result of sound or reasonable trial strategy. *Strickland*, 466 U.S. at 688; *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, a defendant may rebut the presumption by providing a record from which the appellate court may determine that trial counsel's conduct was not based upon a reasonable strategic or tactical decision. *Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994); *Bohnet v. State*, 938 S.W.2d 532, 536 (Tex. App.–Austin 1997, pet. ref'd). The record from a motion for new trial hearing can serve this purpose, *see Jackson*, 877 S.W.2d at 771-72, and Bazan has provided such a record for our review.

## 2. Failure to Consolidate Cases

In his third issue, Bazan argues that his trial counsel rendered ineffective assistance because he failed to consolidate all of Bazan's criminal cases into the first criminal case filed against him in the 93rd District Court. At the hearing on his motion for new trial, Bazan presented the testimony of Ricardo Salinas, a criminal defense attorney who testified that trial counsel's failure to consolidate the cases constituted deficient performance because consolidation would have delayed a trial in Bazan's case, and delay is in the best interest of any criminal defendant.[2] However, Salinas also acknowledged that the factors influencing the decision to pursue consolidation differ in each case and that it is difficult to know whether consolidation is the best option. Our review of the trial record further reveals that Bazan's trial counsel was aware of the multiple cases and attempted at trial to inform the jury of what he characterized as the alleged political nature of the various cases filed against Bazan. Thus, based on the trial record and the testimony of Salinas, we cannot conclude that the decision of Bazan's trial counsel to not pursue consolidation fell below an objective standard of reasonableness, and Bazan has not rebutted the presumption that the decision was the result of sound and reasonable trial strategy. *See Strickland*, 466 U.S. at 688; *Mallett*, 65 S.W.3d at 62. Bazan's third issue is overruled.

---

[2] Salinas based his delay prediction on the fact that the judge in the 93rd District Court was under indictment at the time of Bazan's trial in the 92nd District Court and, as a result, had a backlog of untried cases.

### 3. Plea Bargain

By his fourth and fifth issues, Bazan claims his trial counsel was ineffective for failing to obtain a plea bargain from the State and failing to communicate plea bargain offers to Bazan. While it is true that defense counsel's failure to inform his client of a plea bargain offer falls below the objective standard of reasonableness for effective performance, *Ex parte Lemke*, 13 S.W.3d 791, 795-96 (Tex. Crim. App. 2000), Bazan points us to no evidence in the record, and we find none, indicating that the State ever made such an offer to Bazan's trial counsel. In fact, the prosecutor who tried the case, Andy Almaguer, testified at Bazan's motion for new trial hearing that the State never would have offered Bazan a lesser punishment, such as pretrial diversion or deferred adjudication, in exchange for a guilty plea. Neither do we find that Bazan's trial counsel rendered deficient performance for failing to diligently pursue a plea bargain. At Bazan's hearing on his motion for new trial, Salinas testified that a defense attorney's performance would be deficient if he did not make every effort to obtain a plea bargain offer. However, other testimony at the hearing established that Bazan had never asked his trial counsel to engage in plea negotiations, that Bazan had instructed his trial counsel that dismissal was the only option to pursue with the State, and that he was not interested in plea bargaining. The foregoing evidence does not rebut the presumption that the performance of Bazan's trial counsel regarding plea bargaining with the State was objectively reasonable. *See Mallett*, 65 S.W.3d at 62; *Thompson*, 9 S.W.3d at 813. Bazan's fourth and fifth issues are overruled.

## D. No Evidence

By his sixth issue, Bazan argues that there was no evidence that any alleged theft was committed in defendant's capacity as a public servant. However, Bazan fails to specify the type of challenge he is making to the evidence at trial, and based on his brief, we are unable to discern the nature of his argument. Most importantly, Bazan cites to no legal authority and does not point us to any portion of the record that would aid us in determining what sort of evidentiary challenge he is mounting. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). We therefore conclude that Bazan has inadequately briefed this issue and has waived his challenge to the evidence. *See id.* Bazan's sixth issue is overruled.

## E. Confrontation

By his seventh issue, Bazan complains that the trial court violated his constitutional right to confront and cross-examine adverse witnesses by allowing the statements of a deceased person, Raul De La Rosa, into evidence. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

### 1. Standard of Review and Applicable Law

The Confrontation Clause prohibits a witness from recounting a declarant's out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Generally, a statement is considered "testimonial"

if it is a "solemn declaration made for the purpose of establishing some fact." *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005).

However, even if we find the statement is testimonial and that its admission is constitutional error, that error is subject to a harmless error analysis, and "we need not reverse the trial court's judgment if we conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment." *Id.* at 881; *see* TEX. R. APP. P. 44.2(a). The reviewing court must first assume that the damaging potential of the violation was fully realized. *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). With that assumption in mind, we analyze the alleged error in connection with the following factors: (1) the importance of the witness's testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the witness's testimony on material points; (4) the extent of cross-examination permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Van Arsdall*, 475 U.S. at 684).

### 2. Analysis

Based on our review of the trial record, it appears the State was attempting to introduce the written statement given by Raul De La Rosa, owner of De La Rosa Collision Wrecker Service, for purposes of proving that Bazan lied about the Jetta being abandoned, towed and impounded, and auctioned at a sale of abandoned vehicles. However, further review of the record reveals that the statement was never admitted; Bazan objected to the admission of the statement given to the fraud investigators each time the State attempted to admit it, and the trial court sustained the objections.

10

On two other occasions, other statements by De La Rosa came into evidence through the arguably hearsay testimony of one of the fraud investigators; the investigator testified that De La Rosa had initially told him that there had been a tow-away but later recanted and admitted there had been no tow-away, impoundment, or auction. We first note that Bazan lodged no objections to this testimony. *See Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.–San Antonio 2008, pet. ref'd) (holding that a defendant does not preserve the issue for review where he fails to object at trial based on the Confrontation Clause). But even presuming that the admitted statements violated Bazan's right to confront and cross-examine an adverse witness, *see Shelby*, 819 S.W.2d at 547 (assuming that the damaging potential of the violation was fully realized), the same information was admitted through the testimony of other live witnesses without objection. *See Russeau*, 171 S.W.3d at 881; *see also Baldree v. State*, 248 S.W.3d 224, 232 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd) (holding that trial court's violation of the defendant's confrontation clause rights was harmless in light of the later introduction of the same information). Angela Fraide, who was employed at De La Rosa Collision Wrecker Service at the time of the incident, testified that the Jetta was never impounded in their yard and was never auctioned. She further testified that she prepared a false towing slip at the direction of De La Rosa. Ray Eufracio, the Hidalgo County Auditor, testified that his office had no records of any auction proceeds being filed in connection with the Jetta. Mario Leal, a deputy constable in Bazan's office, testified that the constable's office had no record of the Jetta. Perfecta De La Rosa, the widow of Raul De La Rosa who operated the wrecker business after his death, confirmed that the Jetta had never actually been in

11

the De La Rosa Collision Wrecker Service yard. In sum, because the same information concerning the towing, impoundment, and auction was later presented to the jury without objection, any violation of the Confrontation Clause was rendered harmless, and we conclude, beyond a reasonable doubt, that any resulting error did not contribute to Bazan's punishment. *See Russeau*, 171 S.W.3d at 881; *Baldree*, 248 S.W.3d at 232. Bazan's seventh issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 18th
day of February, 2010.