**Opinion issued February 13, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NOS. 01-13-00109-CR
01-13-00189-CR

————————————

**CYNTHIA LEE WALKER A/K/A DEBORAH ANN WALKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case Nos. 09CR2551 &12CR3363

**MEMORANDUM OPINION**

A jury convicted appellant, Cynthia Lee Walker, of aggravated sexual assault of a child[1] and indecency with a child by exposure,[2] and assessed punishment at 10 years' confinement and 10 years' community supervision respectively, with the sentences to run consecutively. In her sole issue on appeal, appellant contends the trial court erred by admitting the testimony of a forensic interviewer who appellant contends was not the proper outcry witness. We affirm.

## BACKGROUND

When his son was 12 years old, Z.B.'s father, Chris, began to suspect that his son was being sexually abused at the home of appellant, his mother. One day after a family outing to a softball game, Chris and his wife, Angie, began asking Z.B. questions about whether anything was "going on" when he was with appellant. Based on Z.B.'s response, Chris initiated an investigation by calling Children's Protective Services and the police. When the police came to investigate, Chris and Angie gave written "outcry statements," in which they described the statements Z.B. had made to them.

The police then had Z.B. speak to Kim Keever, a forensic interviewer. Z.B. told Keever that he had been sexually abused by appellant and her boyfriend. Z.B.

---

[1] Appeal no. 01-13-00109-CR and trial no. 09CR2551. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon Supp. 2013).

[2] Appeal no. 01-13-00189-CR and trial no. 12CR3363. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (Vernon 2011).

said that his mom would "rub on him" and "suck on his pee pee," and that the abuse began when he was 8 years old and continued until he was almost 12. Z.B. said that his mom was "teaching him what grown-up women like." Z.B. also testified that appellant and her boyfriend would show him pornography, and appellant made him touch her vagina with his mouth and hand. Appellant's boyfriend had also molested Z.B. on one occasion. Appellant told Z.B. that she would kill herself if he told anyone.

At trial, the State first called Angie and Chris, who, after reaching an agreement with defense counsel, did not provide any details about what Z.B. had told them when they asked whether anything was going on. Likewise, Chris's and Angie's outcry statements were not included in the evidence presented to the jury. The State then called the forensic interviewer, Keever, who testified in detail as to the sexual abuse described to her by Z.B. Finally, the State called Z.B., who was 16 years old by the time of trial, and his testimony corroborated that provided by Keever.

Appellant was convicted of both aggravated sexual assault and indecency with a child by exposure. This appeal followed.

## ADMISSION OF OUTCRY TESTIMONY

In her sole issue on appeal, appellant contends that the trial court erred by admitting the testimony of the forensic interviewer, Keever, who had talked with

3

Z.B. about the sexual abuse by his mother. Appellant argues that Keever was not the first person Z.B. spoke to about the abuse; his father and stepmother, Chris and Angie, were.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* In addition, we must review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Id.*

Hearsay is a statement, other than one made by the declarant while testifying at trial, that a party offers to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *Baldree v. State*, 248 S.W.3d 224, 230–31 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Hearsay statements are inadmissible, except as provided by statute or other rule. TEX. R. EVID. 802. The Code of Criminal Procedure provides a statutory exception to this general rule: when a defendant is charged with certain offenses against a child under fourteen, including aggravated sexual assault of a child and indecency with a child, article 38.072 permits the first person over the age of eighteen to whom the child makes a statement describing the offense to testify as to the child's statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2013); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App.

4

2011).  We review the trial court's determination of the proper outcry witness for an abuse of discretion. *See Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

## B. Admission of Forensic Examiner's Testimony

Appellant specifically argues on appeal that the trial court "should have not admitted the outcry testimony of [forensic investigator] Kim Keever of statements made to her by [Z.B.] of incidents of alleged sexual abuse by his mother because he had made earlier outcry statements to [his stepmother] and [his father] for reason that admission of Ms. Keever's testimony deprived Appellant of her federal and state rights to due process."  The State responds that appellant withdrew her objection to Keever's testimony when the State agreed not to elicit details of the abuse from Z.B.'s father and stepmother, and that, as a result, her objection was waived.  During trial the following exchange took place when the State called Angie, Z.B.'s stepmother, to testify.

> [Defense Counsel]: Your Honor, I anticipate [Angie] being one of the outcry witnesses.
>
> [Prosecutor]:  It is.
>
> [Defense Counsel]:  ***And I guess my position will be that as an outcry witness, they are entitled to call the individual that was told first, which, from the CPS records, it says it was the dad.***
>
> [Prosecutor]:  Actually, no, the dad the [step]mom were both present. There wasn't a difference between the two.

5

[Defense Counsel]:  Okay.

[Prosecutor]:  And I believe as per our notice, they actually didn't get a whole lot of details, Your Honor.  I'm putting them on the stand so they can tell them exactly what they knew.  The actual outcry for the details is actually the forensic interviewer, but mom and dad were present.

He's the first person he told that something was going on, I guess is what I'm trying to say.

[Trial Court]:  Okay. So they—so both at the same time were present when the outcry was made.

[Prosecutor]:  According to their statements, Your Honor.  There had been a soft ball game earlier that day, and they went in his room to talk to him.  It was both of them.  But it was both present.

[Defense Counsel]:  As long as—I guess one of my worries is this is the story has kind of expanded, different allegations, as this investigation has gone on.

[Prosecutor]:  How so?

[Defense Counsel]:  Well, I mean, I think some of their allegations have become a little bit more detailed in interviewing [Z.B.].

[Trial Court]:  That's the subject of cross-examination.

[Defense Counsel]:  *I guess I would request that they be limited to— just to what was noticed in the outcry statement.*

[Trial Court]:  So you're wanting to limit the witness' testimony to just what was in the outcry statement?

[Defense Counsel]:  Correct.

[Prosecutor]:  I'm sorry, Your Honor, to interrupt; but do you have copies of the statements?

[Trial Court]:  Yes.

6

[Prosecutor]:  Then, we are fine.

[Defense Counsel]:  *I guess my other objection would be, I still think under the statute, that you are only entitled to—and I know this is a—one outcry witness.*

I think she's going to attempt to offer the parents as an outcry and then the forensic interviewer as an outcry, and it's supposed to be the first adult that was told.

[Prosecutor]:  Right, Your Honor.  And that's why they will be able to testify as to what they were told, and then the forensic interviewer will be able to testify as to what she was told.  Honestly, Your Honor, the parents didn't get a whole lot of detail, so they aren't the true outcries to the individual incidents.  They basically generically know about rubbing and videos, honestly.  It was the forensic interviewer that got into when things took place, where they took place, and exactly what was rubbed and where it was rubbed and so on, Your Honor.  So the parents aren't a proper outcry for those particular allegations.  That's why.

[Defense Counsel]:  I guess, the, that kind of becomes the crux of the issue, is—and there is some case law out there that says there is general outcry, "I was touched," and then they bring in the forensic interview to say, "*Oh, well, this is the outcry we're using," But in those cases, they don't get to use both the parents as an outcry and the forensic interviewer.*  **I think she has to elect who she wants to use as the outcry.**

*[Prosecutor]:*  **If I want to elect, I'm going to elect for the details, but then you can't object to—she's actually the second person.  The parents knew about this video.  If that's what you're saying, I would be happy to do my forensic interviewer instead.**

[Defense Counsel]:  You can ask the parents, "Did you have a conversation," just the specifics, because that's the whole point of an outcry.  They can say, "[Z.B.] told me X, Y., and Z" under the statute; and so I just wouldn't want them going into [Z.B.] told me X, Y, and Z."

7

[Prosecutor]: Your Honor, I don't have a problem with that. As I said, my concern was bringing the forensic interviewer right off the bat and running into "Actually, he told that something happened to Mom and Dad."

So, if that's what your objection is, I can do that. I don't have a problem with that, Your Honor.

[Trial Court]: Let me make sure I understand how this is going to proceed. Are you going to still call [Angie]?

[Prosecutor]: Yes.

[Trial court]: *When you call [Angie], what are you going to cover with [her]?*

[Prosecutor]: *I'll probably do the same type of background stuff I was going to do anyway, what kind of kid is he, so on, so forth. I will ask her if he told her anything, and I will tell her I want to know nothing about any of the details of what he told her.*

[Trial Court]: Is that okay with you?

[Defense Counsel]: *Yes.*

[Prosecutor]: Same thing I do with my officers, quite frankly, when I tell them don't get into hearsay.

Let me inform my witness, explain what's going on, Your Honor, if you give me a minute to do that.

[Trial Court]: Sure.

[Prosecutor]: Then I will inform my forensic interviewer we might get to her faster. I told her 1 o'clock. We might get to her before lunch. She might kill me.

8

After this exchange, the trial court made no ruling on appellant's initial objection, and the State proceeded to call Angie, who testified only to the relationship between Z.B. and her family, and that she gave a statement to police "once this incident came to light in October of 2008[.]"

The State also called Z.B.'s father, Chris, who testified about his relationship with Z.B. and appellant. Chris also testified that he initiated an investigation of the allegations in this case by calling CPS and law enforcement. Like Angie, Chris testified that he made a statement to law enforcement, but he was asked no questions about the content of that statement.

Defense counsel made no further objection to the testimony of either of these witnesses. However, before the State called the forensic interviewer, the Prosecutor, not the Defense Counsel, asked to revisit the issue so that the earlier agreement regarding outcry witnesses would be "on the record."[3] The following exchange then took place:

> [Prosecutor]: Your Honor, first of all, it occurred to me that the conversation we had at the bench regarding the outcry and the agreements and such that were made were not on the record, and those will need to be on the record. And then I have some questions and issues based upon that.
>
> [Trial Court]: Okay. Well, let's go ahead and re-address the issues on the record.

---

[3] Apparently the prosecutor was unaware that the earlier bench conference had been recorded and was already part of the record.

9

[Defense Counsel]: I guess to summarize our discussion earlier—and please—this took place early in the morning. The prosecutor was getting ready to call the complaining witness' mom, who had a written statement, and then intended to call the complaining witness' father, who also had a written statement, and then to call the caseworker. And she wanted to get into the substance of the outcries on all three.

*And my objection was basically that I though she got to do one or the other as a potential outcry and that, I guess the—I mean, that was kind of my position.*

[Prosecutor]: And, Your Honor, my position—and I'm going to try to reiterate it—is I get more than one outcry, if there is more than one outcry, in that the initial outcry told of an event, but there were no specifics and it did not include all of the events that took place. In other words, the initial people that were told—it was the mother and father together at the same time. They were told two things happened, but they weren't given any detail as to when and where and how. And, furthermore, they didn't know all of the events.

At that point I believe the Court asked me what, again, the charges were that she had been charged with, and we reiterated that to the Court. I think at this point it was argued that even if I got in the forensic interviewer, because of all the details and so forth, the case law was iffy—let's just say iffy, from my opinion, as to whether or not it's proper for me to have all of them.

And I think what I ultimately said was I can assure the Court that there are no more details that will be testified to by the initial outcries than are present in the written statements, which had been turned over to and also noticed to defense counsel. *Ultimately, Your Honor, I believe it was decided, fine, if I have to choose between the three, then I was going to go with the skilled, trained interviewer rather than have the argument about the mother and father and whether or not that was appropriate; and, thus, I did not ask any questions of the mother and father regarding the initial outcry when they were on the stand.*

Since then I have gone back to look at the statute and the case law again, and I think—I want to re-urge something so it's very clear

10

for the appellate record. In no way did the initial outcry go to all of the specific events. And case law has been consistent in that the outcry witness goes to the event and not the person. So you don't get one outcry per person. You get one outcry per event.

I think the case law that I was looking at over the lunch breach is also clear that I don't get to just jump to the next one because it's convenient. In other words, if the argument is that the initial outcry is no specific enough to qualify as an outcry, then, yes, I get to move on to the next adult. But that's going to need to be on the record in some way. Otherwise, it might not be appropriate to go directly to the forensic interviewer without the Court establishing that that is, in fact, the appropriate outcry in this case.

[Trial Court]: Okay. As I understand it from our discussion—I actually also looked it up myself on the break, and I do understand it to be that there can—that it does go to the events, that the outcry is event-specific such that if there are multiple events, you can have multiple outcry testimony if there is—if each event was told to a different person, and if the outcry was general in nature, that then the forensic investigator— is that right?

[Prosecutor]: Interviewer.

[Trial Court]:—forensic interviewer can then testify to the specifics that were revealed to the interviewer. So I do understand it to be the case—*I actually made no ruling on the issue earlier because it seemed that the two of you came to an agreement in the way you would proceed. So because you can to an agreement in the way you proceed, I chose to leave it to you and allow you to question your witnesses accordingly.*

Is there some sort of different action you want to take at this point?

[Prosecutor]: Well, Your Honor, I guess what I need is either a ruling from the Court or agreement from counsel that the forensic interviewer is the appropriate outcry or I need to put testimony on the record—doesn't necessarily have to be in front of the jury—so that the record can establish what facts the other outcry did or did not

11

know. . . . The case style involving multiple outcries, if I may approach, Your Honor, is *Chapman v. State*, a Houston Court of Appeals case from 2004. Essentially, this case sounds, to me, like there were four outcries. There was a sister. There's an interviewer. There's several people. And what the Court did was they had a hearing and had the outcry testify as to—there was a pretrial hearing, and at least two of the outcries testified as to what facts they would testify to in front of the Court. And the appellate court ultimately made the ruling as to whether or not the outcries that testified, the facts that they had, made it appropriate that that was the outcry or not, before moving to the next person. The case if front of you gets even more complicated because when they got to trial, arguably the outcry they used was still the wrong outcry. That was ultimately held to be harmless because of the other testimony in the trial.

But my concern is that as an appellate issue, without it being on the record, what [Angie] and/or [Chris] would have testified to—I don't know what—how the decision—how do I put this? I don't know how the decision to go with the forensic interviewer gets supported, is where I'm going with this.

[Defense Counsel]: ***The appellate issue will be something that I should have objected to the forensic interviewer because the other two were the appropriate outcry***. So I guess the issue is the judicial determination one way or the other.

[Prosecutor]: Right. I can tell the Court—and I can give you the statements that Mr.—

[Defense Counsel]: The statement is what they will testify to.

[Prosecutor]: Literally, they are not going to go beyond the details in the statement. I asked that repeatedly. And because it's been so long—

[Trial Court]: So do you want to make an offer of proof of the statements and introduce the statements?

[Prosecutor]: If I could, Your, Honor, I would like to do that, and I would like to have it clear on the record.

[Trial Court]: Okay. Yeah, we can just admit those statements as an offer of proof, have that on the record. And that should cover you, right?

[Defense Counsel]: Yes.

[Prosecutor]: I think so, Your Honor. I think it covers us both. Your Honor, how would you like to label these for Court purposes? Your Honor, I'm tendering what's been marked as Court Exhibit No. 1 and 2. They are the written statements of [Angie] and [Chris].

[Defense Counsel]: And, Your Honor, for the record, those statements were tendered to us previously, and those appear to be an exact copy of the statements in the file.

[Trial Court]: Okay. Then, I will admit Court Exhibit 1 and Court Exhibit 2 as an offer of proof. And I'll tender them to the court reporter. Anything else?

[Defense Counsel]: Do we need a ruling on the record—that the forensic interviewer is the appropriate outcry?

[Prosecutor]: Yes.

[Trial Court]: ***Well, considering that there was—really there was no—there was an initial objection and then you came to an agreement and then you presented, I don't think that that's an appropriate ruling for me to make at this time because there was an agreement as to what you were going to do***.

[Defense Counsel]: ***I'm fine***.

[Prosecutor]: I think we're both fine.

[Trial Court]: All right. Thank you. Anything else?

[Prosecutor]: Nothing further from the State, Your Honor.

As these two rather lengthy exchanges show, although appellant initially objected that the father should be the appropriate outcry witness, she later modified her position by requesting that the State choose either the forensic interviewer or the parents. The State responded by choosing the forensic interviewer and agreeing not to question the parents about any of the details contained in their outcry statements other than the fact that the statements were made, and, in fact, that is what the prosecutor did at trial. No ruling was made by the trial court on appellant's initial objection in light of this agreement between the parties.

Likewise, appellant did not object when the State prepared to call the forensic interviewer or during the forensic interviewer's testimony. Instead, the State, in an abundance of caution, re-approached the court and asked to have the parents' written outcry statements included in an offer of proof in the event that the propriety of the forensic examiner's testimony became an issue on appeal. The State also requested a ruling from the trial court on appellant's earlier objection.

The trial court agreed to admit the statements in an offer of proof, but declined to make a ruling on the propriety of the forensic interviewer's testimony because "***there was an agreement as to what you were going to do***." Indeed, defense counsel also indicated that he had not objected by noting that any appellate issue would be "that I ***should have*** objected to the forensic interviewer because the

14

other two were the appropriate outcry[,]" and later said "I'm fine" with the trial court's decision not to rule in light of the parties' earlier agreement.

To preserve a complaint for review on appeal, a party must make a timely, specific request, objection, or motion to the trial court that states the grounds for the ruling sought, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510 (Tex. Crim. App. 2001). Furthermore, the complaint raised on appeal must comport with the objection made in the trial court. *See Swain v. State,* 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (holding that appellant failed to preserve complaint for review when trial objection did not comport with issue raised on appeal).

There being no objection by appellant as to the proper outcry witness after reaching an agreement with the State on how to proceed and no ruling by the trial court on the same, appellant has failed to preserve error for appeal.

We overrule appellant's sole point of error on appeal.

## CONCLUSION

We affirm the trial court's judgment.


                      Sherry Radack
                      Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).