Patrick Loyle BALDREE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00211–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 28, 2007.

Discretionary Review Refused
Dec. 19, 2007.

Thomas D. Moran, Schneider & McKinney, P.C., Houston, for appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Kevin P. Keating, Assistant District Attorney, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Patrick Baldree, was charged by indictment with the offense of burglary of a habitation,[1] enhanced by two prior felony convictions. Appellant pleaded not guilty to the primary offense, but pleaded "true" to the enhancements. A jury found appellant guilty as charged in the primary offense, found the enhancement paragraphs true, and assessed punishment at 38 years' confinement.

In four issues, appellant contends that the trial court erred by (1) excluding the testimony of his expert on eyewitness identification; (2)-(3) precluding appellant from impeaching certain witnesses with prior inconsistent statements; and (4) sustaining the State's hearsay objections during a pretrial hearing, to which the Texas Rules of Evidence do not apply.

We affirm.

## Summary of Facts and Procedural History

On the evening of March 7, 2005, complainant Phillip Abbott and his wife, Sherri Abbott, arrived at their Kingwood home to find the inside lights on and an unfamiliar white truck parked out front. As Mr. Abbott parked in his driveway, he noticed that the lower portion of his front door was missing. As Mr. Abbott stepped out of his car, a man emerged through the hole in the bottom of the door and began to run. Mr. Abbott was unsure whether the man was running at him or to the white truck. Mr. Abbott focused on the man's facial features, trying to ascertain the man's intentions. The man ran past Mr. Abbott, passing three to four feet away, and got into the white truck. The truck failed to start immediately, which afforded Mr. Abbott the opportunity to write down the truck's license number. Inside the home, the Abbotts found their bedroom in disarray and a ring missing.

Houston Police Officer M. Zientek traced the truck's license number to appellant. Officer Zientek assembled a photo array containing appellant's image, presented the array to Mr. Abbott, and read Mr. Abbott an admonition that a suspect might or might not be included in the array. Within seconds, Mr. Abbott positively identified appellant as the man he saw running from the Abbott home on the night of the incident. Mrs. Abbott did not to view the array.

At a pre-trial hearing, appellant challenged the admissibility of the array, contending that it was impermissibly suggestive. Mr. Abbott testified concerning the incident at his home, the subsequent presentation of the array, and his identification of appellant. Officer Zientek testified concerning the procedures used to assemble and present the array. The trial court ruled that the array was not impermissibly suggestive.

At trial, Mr. Abbott again identified appellant as the perpetrator. Appellant's defense was that Mr. Abbott has misidentified him. Appellant contended that his roommate had actually committed the burglary, using appellant's truck.

Additionally, evidence was presented at trial that Officer Zientek recovered pawn shop receipts from appellant's truck. One of the receipts, which bore appellant's signature, was traced to a watch stolen from a home in the Abbott's neighborhood a

---

1. *See* Tex. Pen.Code Ann. § 30.02(a) (Vernon Supp.2006).

week prior to the invasion of the Abbott's home.

### Exclusion of Expert Witness

In his first issue, appellant contends that the trial court erred by excluding the testimony of his expert on eyewitness identification.

### A. Standard of Review and Governing Principles of Law

■ A trial court's determination of a witness's qualifications as an expert and its decision to exclude expert testimony are reviewed for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000). If the trial court's ruling lies within the zone of reasonable disagreement, the trial court's ruling will be upheld. *Id.*

■ Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education may testify thereto in the form of an opinion or otherwise." Tex.R. Evid. 702. The proponent of expert testimony must show by clear and convincing proof that the evidence he seeks to introduce is sufficiently (1) relevant and (2) reliable to assist the trier of fact in accurately understanding other evidence or in determining a fact at issue. *Weatherred*, 15 S.W.3d at 542.

#### 1. Relevance

■ The standard for relevance is whether the scientific principles "will assist the trier of fact" and are "sufficiently tied" to the pertinent facts of the case.

*Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim.App.1996). The expert must make an effort to tie pertinent facts of the case to the scientific principles that are the subject of his testimony. *Id.*

#### 2. Reliability

■ Expert witness testimony in the field of psychology pertaining to the reliability of eyewitness identification of a suspect from a photographic lineup is a "soft science." [2] In the field of "soft sciences," the proponent of the evidence must show that (1) the field of expertise involved is legitimate; (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *State v. Medrano*, 127 S.W.3d 781, 784–86 (Tex.Crim.App. 2004); *Dennis v. State*, 178 S.W.3d 172, 182 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd).

The facts in a particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing and such facts need not be admissible in evidence if they are of a type reasonably relied upon by experts in the particular field in forming opinions on the subject. Tex.R. Evid. 703.

### B. Analysis

■ Here, appellant proffered the testimony of Dr. Steve Rubenzer as an expert on eyewitness identifications, and the trial court conducted a hearing outside the presence of the jury. Dr. Rubenzer testified that he is a licensed psychologist and board certified forensic psychologist. He has read many articles on the topic of

---

**2.** "Hard sciences" are those based on scientific methods which are susceptible to rigid scientific testing, such as chemistry; "soft sciences" include non-scientific disciplines that rely principally upon technical or specialized knowledge, skill, or experience, such as psychology. *See Weatherred v. State*, 15 S.W.3d 540, 542 n. 5 (Tex.Crim.App.2000).

eyewitness identification, but he has not authored published articles or conducted original studies in the area of eyewitness identification. Dr. Rubenzer has testified as an expert on eyewitness identification one previous time.

In addition, Dr. Rubenzer testified that, in preparation for his testimony in the instant case, he reviewed the photo array and the transcript of the pre-trial hearing on the admissibility of the photo array, and he discussed a general outline of the case with defense counsel. Dr. Rubenzer acknowledged that he had not reviewed anything else, had not talked with, looked at, or visited with appellant, and had not talked with the Abbotts, Officer Zientek, or any other witness in the case.[3] In addition, when cross-examined by the State as to whether he felt there were things that he did not know about the identification in this case, Dr. Rubenzer confirmed that "there are many things I don't know about the identification, yes."

Dr. Rubenzer testified that he could assist the trier of fact by testifying "in terms of general principles of memory and recall and what psychologists have learned about that process and how it can be affected and contaminated." In addition, Dr. Rubenzer testified that he could "speak as to the great deal of research that's been done in terms of how eyewitness identification procedures are performed." Further, Dr. Rubenzer testified that he could "speak to issues such as what we know about accuracy rates of photo spreads conducted in many different settings ... [and] the issues that can lead to false identification, some of which are not obvious to lay peo-

ple." Dr. Rubenzer testified that his testimony would affect "the weight that people put to the photo spread identification and to an identification in court."

At the conclusion of the hearing, the trial court ruled that Dr. Rubenzer's testimony was inadmissible. The trial court found that Dr. Rubenzer was qualified as an expert and that eyewitness memory could be a valid science under certain conditions, but that Dr. Rubenzer's testimony was not relevant because he had no actual knowledge as to what procedures were used by the police officers, what the witnesses were told, what they saw or did not see, or how information was presented to the witnesses. Therefore, he could not adequately tie the scientific principles on misidentification to the specific facts of the case.[4]

By bill of exception, appellant presented that, had Dr. Rubenzer been permitted to testify, he would have testified that "there is an area of expertise called false identification"; that the demonstration of photo spreads carries various rates of reliability; that photo spread procedures can be suggestive; that there may be discrepancies between the procedures that the National Institute of Justice recommends and what was done in this case; and that a subsequent in-court identification "is always going to be tainted."

■ In conducting a relevancy review under rule 702, we consider whether the scientific principles "will assist the trier of fact" and are "sufficiently tied" to the pertinent facts of the case. *Jordan,* 928 S.W.2d at 555. The inquiry is not whether

---

**3.** We recognize that Texas Rule of Evidence 703 permits an expert to base his opinion testimony on facts or data made known to him during trial. *See* TEX.R. EVID. 703. Hence, we do not conclude that Dr. Rubenzer's testimony is lacking because he failed to

interview witnesses. *See Jordan v. State,* 928 S.W.2d 550, 556 n. 8 (Tex.Crim.App.1996).

**4.** Because it is not necessary to our disposition, we do not address whether eyewitness identification is a valid science under certain conditions. *See* TEX.R.APP. P. 47.1.

there are *some* facts that the expert failed to take into account, but whether the expert took into account *enough* pertinent facts to be of assistance to the trier of fact. *Id.* at 556. As the reviewing court, we examine whether the expert made an adequate effort to tie the pertinent facts of the case to the scientific principles about which he was to testify. *Morales v. State,* 32 S.W.3d 862, 866 (Tex.Crim.App.2000); *Jordan,* 928 S.W.2d at 555 (explaining that "this connection is not so much a matter of proof, however, as a matter of application").

■ Here, the record shows that the substance of Dr. Rubenzer's testimony was in the form of general principles. "Generic testimony" and general studies are not sufficient unless they are connected to the facts of the case. *See Morales,* 32 S.W.3d at 866 (citing *Williams v. State,* 895 S.W.2d 363, 366 (Tex.Crim.App.1994) (concluding that expert witness failed to connect generic testimony concerning psychological profiles of offenders to facts of case) *and Rousseau v. State,* 855 S.W.2d 666, 686 (Tex.Crim.App.1993) (concluding that testimony was not relevant where expert only referred to "studies" and did not discuss whether any factors he planned to testify to would apply to specific facts of case)).

Appellant did not, by his bill of exception, demonstrate that Dr. Rubenzer's opinions related to any of the specific facts of this case, nor did appellant identify factors that could assist the jury in this case, other than in the most general sense. *See Salazar v. State,* 127 S.W.3d 355, 360 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd). Dr. Rubenzer did not exhibit knowledge of the specific facts of this case or tie the scientific principles on which he sought to testify to the facts of this case, other than to postulate generally that it is preferable that separate photos be submitted to witnesses for identification purposes, rather than an array form. *See id.* Dr. Rubenzer's testimony was offered purely as educational material for the jury, which is insufficient to demonstrate that the scientific principles "will assist the trier of fact" in this case or are "sufficiently tied" to the pertinent facts of the case. *Jordan,* 928 S.W.2d at 555–56; *Salazar,* 127 S.W.3d at 360.

We conclude that the trial court's determination that appellant failed to show by clear and convincing evidence that Dr. Rubenzer's testimony was relevant, because he failed to tie pertinent facts of this case to the scientific principles about which he planned to testify, as required, lies within the zone of reasonable disagreement. *See Weatherred,* 15 S.W.3d at 542; *Jordan,* 928 S.W.2d at 555–56. We hold that the trial court did not abuse its discretion in excluding Dr. Rubenzer's testimony.

Accordingly, appellant's first issue is overruled.

### Prior Inconsistent Statements

In his second and third issues, appellant contends that the trial court erred by precluding him from impeaching certain witnesses with prior inconsistent statements. Appellant contends that the trial court improperly sustained the State's hearsay objections to each line of questioning.

### A. Standard of Review and Principles of Law

■ We review the trial court's exclusion of testimony under an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001). We will uphold the trial court's decision unless it lies outside the "zone of reasonable disagreement." *Id.*

■ Hearsay is a statement, other than one made by the declarant while tes-

tifying at trial, that is offered to prove the truth of the matter asserted. TEX.R. EVID. 801(d). Hearsay statements are inadmissible except as provided by statute or other rule. TEX.R. EVID. 802. When a prior statement is not offered as primary evidence, but to impeach the witness's credibility, it is not hearsay. *Flores v. State,* 48 S.W.3d 397, 404 (Tex.App.-Waco 2001, pet. ref'd).

Rule 613 provides that a witness may be examined "concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed." TEX.R. EVID. 613(a). As a predicate, the witness must be told the contents of the statement, the person to whom it was made, and the time and place it was made. *Id.* The witness must be given an opportunity to explain or deny the statement. *Id.* If the witness unequivocally admits to having made the prior statement, extrinsic evidence will not be admitted. *Id.*

 Improper limitation of cross-examination violates the confrontation clauses of both the state and federal constitutions, and is subject to a constitutional harmless error analysis. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; TEX. R.APP. P. 44.2(a); *Lopez v. State,* 18 S.W.3d 220, 222 (Tex.Crim.App.2000). Because a violation of the right to cross-examination under the Confrontation Clause necessarily means that the testimony was not permitted before the fact finder, we apply a three-pronged test in our review of the exclusion of such evidence. *Shelby v. State,* 819 S.W.2d 544, 547 (Tex. Crim.App.1991); *Smith v. State,* 236 S.W.3d 282, 293 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.). First, a reviewing court must assume that the damaging potential of the cross-examination was fully realized. *Shelby,* 819 S.W.2d at 547 (citing

*Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)); *Smith,* 236 S.W.3d at 293. Second, with that assumption in mind, we analyze the error in connection with the following factors: (1) the importance of the witness' testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the witness' testimony on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Shelby,* 819 S.W.2d at 547 (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438); *Smith,* 236 S.W.3d at 293. Finally, keeping the first two prongs in mind, we determine whether the error was harmless beyond a reasonable doubt. TEX.R.APP. P. 44.2(a); *Shelby,* 819 S.W.2d at 547; *Smith,* 236 S.W.3d at 293.

### B. Analysis

#### 1. Mrs. Baldree

██ In his second issue, appellant contends that he was precluded from impeaching Officer Zientek with a prior inconsistent statement. During defense counsel's cross-examination of Officer Zientek, Officer Zientek denied that, when he visited with appellant's wife, Dianne Baldree, at her home on March 13, 2005, he told Mrs. Baldree that the suspect was a Hispanic male.

Subsequently, defense counsel unsuccessfully attempted to question Mrs. Baldree as to whether Officer Zientek had told her that he was looking for a Hispanic male, as follows:

> [Defense]: And did [Detective Zientek] tell you [Mrs. Baldree] that he was looking for a Hispanic male?
>
> [State]: Objection, hearsay.
>
> The Court: Sustained.

[Defense]: Your Honor, these questions have been previously asked to Zientek and gotten a negative response.

After having the jury removed, the trial court explained its ruling based on the court's belief that the defense counsel's questions constituted improper impeachment and, thus, elicited hearsay evidence. Appellant contends that the trial court erred by sustaining the State's objection and that such error impinged on his constitutional right to confront Officer Zientek.

Appellant made an offer of proof as follows:

[Defense]: Had Mrs. Baldree been allowed to answer, she would have answered that Officer Zientek said that the suspect was a Hispanic male.

The Court: All right.

[Defense]: That's it.

The record shows that defense counsel laid the proper predicate for the use of Mrs. Baldree's testimony to impeach Officer Zientek. Officer Zientek was told the contents of the statement at issue (that the suspect sought was a Hispanic male), the person to whom it was made (Mrs. Baldree), and the time and place it was made (on March 13, 2005 at Mrs. Baldree's home). *See* Tex.R. Evid. 613(a). Officer Zientek did not unequivocally admit having made the prior statement; thus, extrinsic evidence of his statement was admissible. *See id.* It was error for the trial court to exclude Mrs. Baldree's testimony on this point.

■■■ Having determined that error occurred, the next step is to assess whether harm resulted. The harmless error analysis presupposes that the testimony at issue was not permitted to be presented to the fact finder. *See Shelby,* 819 S.W.2d at 547; *Smith,* 236 S.W.3d at 293. Here, however, the excluded testimony *was* later placed before the fact finder. The record shows

that, although Mrs. Baldree's statement was initially excluded, the statement at issue came in when Mrs. Baldree later testified before the jury as follows:

[State]: When [Detective Zientek] came to your home and you showed him the caller ID, why did you show him that?

[Mrs. Baldree]: Because he had asked me—he told me that he was looking for who might possibly have been driving my husband's truck. That he was not a suspect and they were—

[State]: No. But why did you show him—

[Mrs. Baldree]: —looking for a Hispanic male.

We hold that the trial court's error in initially excluding Mrs. Baldree's testimony on this point was rendered harmless because the same statement was later presented to the jury. *See Mosley v. State,* 983 S.W.2d 249, 258 (Tex.Crim.App.1998) (finding, in context of constitutional error, that exclusion of testimony did not contribute to conviction or punishment when same testimony was later admitted). Therefore, the trial court's initial exclusion of the statement was harmless.

Accordingly, appellant's second issue is overruled.

2. Mr. Abbott

■■■ In his third issue, appellant contends that he was precluded from introducing a prior inconsistent statement by Mr. Abbott concerning his description to the police of appellant's truck. Appellant contends that the trial court improperly sustained a hearsay objection by the State. Specifically, appellant complains of the following colloquy that took place during defense counsel's cross-examination of Mr. Abbott:

[Defense]: Do you [Mr. Abbott] also see from Defendant's Exhibit No. 3 a ser-

ies of metal or plastic racks on the roof of the car [sic]?

[Abbott]: Yes, I do.

[Defense]: You did not describe those to Officer Ferrell, did you, either?

[State]: Objection, hearsay. He's asking for an out of court statement being offered for the truth of the matter stated, Judge.

The Court: That's sustained.

[Defense]: Was that included in your description?

[Abbott]: It was not.

[Defense]: Okay.

[State]: Judge, I'd like the jury to disregard. That was the same exact question.

The Court: Okay. Ask the questions in the affirmative.

Appellant contends that Mr. Abbott's testimony did not constitute hearsay because it was not offered for the truth of the matter asserted but constituted an attempt to impeach Mr. Abbott with a prior inconsistent statement.

■ To qualify for admission as a prior inconsistent statement, appellant must demonstrate that "the statements are indeed inconsistent." *Lopez v. State*, 86 S.W.3d 228, 230 (Tex.Crim.App.2002). Mr. Abbott testified at trial that he did not include roof racks in his description of appellant's truck when he described the truck to the police at the time of the incident. Appellant failed to demonstrate any inconsistency between Mr. Abbott's prior statement to the police and his testimony at trial.

Accordingly, appellant's third issue is overruled.

### Pre-trial Hearing

■ In his fourth issue, appellant contends that the trial court erred by sustaining the State's hearsay objections during the pretrial hearing because the Texas Rules of Evidence are inapplicable during a pre-trial hearing.

■ Rule 104(a) provides, in pertinent part, as follows:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court.... In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

TEX.R. EVID. 104(a). Hence, the power to disregard the rules exists, but nothing in the language of the rule compels the trial to exercise that power. The trial court "must be given wide latitude in its decision to admit or exclude evidence." *Harris v. State*, 152 S.W.3d 786, 793 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd).

Here, appellant has not shown that an application of the rules of evidence during the pre-trial hearing in this case constituted an abuse of discretion.

Accordingly, appellant's fourth issue is overruled.[5]

### Conclusion

We affirm the judgment of the trial court.

---

**5.** Appellant has not argued on appeal that the trial court abused its discretion by substan- tively excluding the proffered evidence.