ACCEPTED
12-15-00039-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/7/2015 12:19:24 PM
Pam Estes
CLERK

CASE NO. 12-15-00039-CR

IN THE TEXAS COURT OF APPEALS

TWELTH SUPREME JUDICIAL DISTRICT

TYLER, TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
10/7/2015 12:19:24 PM
PAM ESTES
Clerk

On Appeal from Cause No.  CR-2014-0191

159th Judicial District Court

Angelina County, Texas

FILED

10/7/2015

Twelfth Court of Appeals
Pam Estes
Clerk

Taurus Leeanthony Jenkins, Appellant

vs.

The State of Texas

BRIEF FOR THE APPELLANT,
Taurus Leeanthony Jenkins

_____

Albert J. Charanza Jr.
CHARANZA LAW OFFICE, P.C.
P. O. Box 1825
Lufkin, Texas  75902
936/634-8568
936/634-0306 (FAX)
SBN: 00783820

ORAL ARGUMENT NOT REQUESTED

# TABLE OF CONTENTS

Identity of All Parties..................................................................................2

Index of Authorities..................................................................................3

Statement of the Case..................................................................................5

Issues Presented.................................................................................. 6

Statement of Facts..................................................................................6

Summary of Argument.................................................................................. 15

Appellant's Point of Error No. 1..................................................................................16

The Trial Court erred in its verdict. The evidence presented at trial is legally insufficient to sustain the conviction

Appellant's Point of Error No. 2..................................................................................19

The Trial court erred in finding Jenkins guilty based on hearsay statements in violation of the Confrontation Clause of the U.S Constitution

Appellant's Point of Error No. 3.................................................................................. 28

The Trial Court erred in finding the Appellant had been previously convicted of an offense under Chapter 19 of the Texas Penal Code

Appellant's Point of Error No. 4..................................................................................29

The Trial Court erred in denying Appellant's Motion for Directed Verdict

Prayer..................................................................................31

Certificate of Service..................................................................................32

Certificate of Compliance..................................................................................32

# IDENTITY OF ALL PARTIES

Pursuant to Tex.R.App.P. 55.2(a), the following is a list of parties to the trial court's judgment and the names and addresses of trial and appellate counsel.

1 Taurus Leeanthony Jenkins, Appellant
 3900 FM 2251
 Lufkin, Texas 75904

2. John Reeves, Counsel for Appellant at Trial
 1007 Grant Street
 Lufkin, Texas 75901

3. Albert J. Charanza, Jr., Counsel for Appellant an appeal
 P.O. Box 1825.  Lufkin, Texas 75902
 (936) 634-8568

4. Katrina Carswell, Counsel for Appellant at Trial
 Assistant District Attorney
 P.O. Box 908
 Lufkin, Texas 75902-0908
 (936) 632-5090

5. April Perez, Counsel for Appellant on appeal
 Assistant District Attorney
 P.O. Box 908
 Lufkin, Texas 75902-0908
 (936) 632-5090

6. The Honorable Paul White, Presiding Judge
 159th Judicial District Court, Angelina County, Texas
 P.O. Box 908, Lufkin, Texas 75902
 (936) 639-3913

# INDEX OF AUTHORITIES

**CASES:**                                                                              **PAGE**

*Jackson v. Virginia*, 443U.S. 307,99 S.Ct. 2781,61L.Ed.2d560 (1979). ......... ......16

*Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010)……………………16

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007)………………………16

*Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008)………….………..…..16

*Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991)......................... ......17

*Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). ......................... ......17

*Carrizales v. State*, 414 S.W.3d 737, 744 (Tex.Crim.App. 2013)………………..17

*Gollihar v. State*, 46 S.W.3d 243, 252-53 (Tex.Crim.App. 2001)……………... ...17

*Wall v. State,* 184 S.W.3d 730, 742 (Tex. Crim. App. 2006)……………...….......20

*Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117(1999)………...20

*Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374…........................................ …......21

*Dixon v. State,* 244 S.W.3d 472(Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)................................................................................... .22,24

*Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)...23

*Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001)................. .......25

*Baldree v. State*, 248 S.W.3d 224(Tex. App.—Houston [1st Dist.] 2007, pet.ref'd)25

*Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ..................... ......24

*Rohrscheib v. State*, 934 S.W.2d 909, 910 (Tex. App.--Houston [1st Dist.] 1996, no pet.)......................................................................................................29

*King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)...............................29

*Reece v. State*, 878S.W.2d 320,325(Tex.App.--Houston [1st Dist.] 1994,no pet.).30

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App.1991)……………..30

## **RULES:**

TEX. CODE CRIM. PROC. ANN. art. 38.04.........................................................16

TEX. PENAL CODE 19.01 – 19.05……………………………………………...28

TEX. PENAL CODE ANN. § 22.01(a).................................................................17

TEX. PENAL CODE ANN. § 22.01(b)(2)(A)….. .................................................28

Tex. R. App. Pro. 44.2 (a).................................................................................17

TEX. R. EVID. 804(a) (3)....................................................................................19

TEX. R. EVID. 804(b)(1)(B). ............................................................................18

TEX. R. EVID. 801(d) .......................................................................................25

TEX. R. EVID. 802.............................................................................................25

TEX. R. EVID. 613(a). ......................................................................................25

TEX. R. EVID. 404 (b) ........................................................................................5

**STATEMENT OF THE CASE**

On April 1, 2014, Taurus Jenkins was indicted for Assault Family Violence that was alleged to have occurred on August 13, 2013. (CR 18) On April 22, 2014, Jenkins waived arraignment and the court entered its scheduling order. (CR 20-21) The trial court entered its Standard Discovery Order which required the Defendant to provide notice to the State of Texas regarding any request for notice of extraneous offenses as required under Rule 404(b) Texas Rules of Evidence and Article 37.07, Texas Code of Criminal Procedure. (CR 22) On August 14, 2014, Jenkins filed his Waiver of Jury Trial and requested a bench trial. (CR 25) On September 24, 2014, the State filed its initial Notice of Intention to Use Evidence of Prior Convictions, Extraneous Offense and Bad Acts. (CR 30-31)

On October 3, 2014, the bench trial began. The trial continued on October 4, 2014 and concluded on October 14, 2014. (Vol. 1) On December 4, 2014, a revocation hearing was held and a PSI was requested by the state. On December 9, 2014, an Order of Bond Conditions was entered by the court. The State filed a Motion to Revoke Bond based on a violation of bond conditions on January 2, 2015.

On January 26, 2015, the sentencing hearing was held. (CR-Vol. 3) The Court found Jenkins guilty and sentenced him to six (6) years in the Texas Department of Criminal Justice - Institutional Division. The trial court certified Jenkins' right to

appeal and entered an Order of Appeal Bond Conditions. (CR 40-42) Jenkins filed his Notice of Appeal on January 27, 2015. (CR-44) Jenkins filed his Motion for New Trial on February 17, 2015. Appellate counsel was substituted on March 3, 2015. (CR47-49)(CR-52) On March 25, 2015, the court held a hearing on the Motion for New Trial was held and the motion was denied. (CR-63).

## ISSUES PRESENTED

<u>Appellant's Point of Error One</u> – The Trial Court erred in its verdict. The evidence presented at trial is legally insufficient to sustain the conviction

<u>Appellant's Point of Error Two</u> – The Trial court erred in finding Jenkins guilty based on hearsay statements in violation of the Confrontation Clause of the U.S Constitution

<u>Appellant's Point of Error Three</u> – The Trial Court erred in finding the Appellant had been previously convicted of an offense under Chapter 19 of the Texas Penal Code

<u>Appellant's Point of Error Four</u> - The Trial Court erred in denying Appellant's Motion for Directed Verdict

## STATEMENT OF FACTS

Taurus Jenkins was indicted for Assault-Family Violence that allegedly occurred on August 13, 2013. (CR 18) On April 22, 2014, Jenkins waived arraignment and the court entered its standard scheduling order. (CR 20-21) On August 14, 2014, Jenkins filed his Waiver of Jury Trial and requested a bench trial. (CR 25)

On October 3, 2014, the bench trial began before Judge Paul White. (Supp Vol. 2) Scott Hamel, a retired Lufkin Police officer, testified he was dispatched to 1622 Knight Street the night of August 13, 2013.(Supp. Vol, 2 pg. 9) Hamel met with Alissia Moore (Moore). Moore described the events that took place. Moore showed Hamel a hole in the wall where she claimed her head was pushed. Moore identified a glass that she claimed to have been hit. (Supp. Vol. 2. pg. 10) Photographs of the scene were taken by Hamel and presented as State's Exhibits 2-9. (Supp. Vol. 2 pg. 11) Hamel did not know what caused Moore's injuries, Hamel could not recall if the injury on Moore's head was from the wall or from the glass. (Supp. Vol. 2 pgs.12-13) Moore also had cuts on her hands. (Supp. Vol. 2 pg. 14) Hamel was not sure how Moore's injuries occurred; other than by Moore telling Hamel they were from the assault. (Supp. Vol. 2 pg. 14)

Hamel read from his offense report that Moore had stated that "Jenkins had grabbed the glass and smashed it over her head that cut her head and her hands" and Jenkins pushed her head into the sheetrock. (Supp. Vol. 2. pg. 15) Hamel stated Jenkins was not at the scene when he arrived. Hamel's report mentioned a location on Wood Street where Jenkins may be located.  After all evidence was collected, Hamel left Moore's residence at 1622 Knight Street to look for Jenkins.  Jenkins left the Wood Street location before Hamel arrived. (Supp. Vol. 2. pg.16)

Hamel could not recall Moore's appearance the day of the assault. Hamel could not recall if Moore was crying that day. Moore was only answering questions asked by Hamel and not volunteering any information. (Supp. Vol. 2 pg. 18) Hamel stated that no evidence was collected from the hole in the wall in which a picture was taken. (Supp. Vol. 2. pg. 19, 22) Moore tried to call 911 call and as interrupted in the process of making the call by Jenkins. (Supp. Vol. 2 pgs. 19-20) Hamel stated Jenkins refused to return to the location where Hamel was located on Wood Street because he was scared to go to jail. (Suppl. Vol. 2. pg. 21)

Jenkins was arrested after Hamel retired. Hamel was unaware that Moore had signed an Affidavit of Non-Prosecution. (Supp. Vol. 2 pg. 22) Hamel did not recall if Moore wanted to go forward with the charges. The charges were filed "by law" based on the evidence. (Supp. Vol. 2 pg. 23) Moore did not admit to Hamel of having thrown the glass at Jenkins. Hamel did not recall a second hole in the wall. (Supp. Vol. 2 pg. 25) Hamel could not verify if there were any injuries on Jenkins due to the fact that he did not see Jenkins that day. Hamel could not say if the broken glass on the floor was from one or two glasses. (Supp. Vol. 2. Pg. 26)

Ronnie Harris, a communications supervisor for the Lufkin Police Department who manages the 911 communication submitted a recording to the court. State's Exhibit 11, the 911 CD-audio was admitted. The 911 audio was played in court.

(Supp. Vol. 2 pgs. 27-30)

The State called Alissia Moore to the stand. The court advised Moore regarding the consequences of perjury and a false statement to an officer due to an affidavit of non-prosecution being filed if it were false. Moore was advised that she could remain silent. (Supp. Vol. 2 pgs. 30-37) Moore requested counsel before testifying. (Supp. Vol. 2 pg. 38) A one page offense report and a copy of her statement would be provided to her attorney whom she consulted. (Supp. Vol. 2 pg. 46) Moore's Affidavit of Non-Prosecution was admitted as State's Exhibit 12. (Supp. Vol. p. 47) Moore testified that she dated Jenkins from June 2011 until March 14, 2014. (Supp. Vol. 2 pgs. 48-49) The Court allowed the State to question Moore until she invoked her right to counsel.

Connell Montgomery, Jr., Jenkins' cousin, testified for the State. On August 13, 2013, Jenkins called Montgomery to pick him up from Moore's residence. Jenkins always called Montgomery to pick him up. Montgomery drove Jenkins to 1810 Wood Street where they talked and drank a beer. Jenkins did not mention the reason why Jenkins wanted to be picked up. Montgomery asked what was going on and Jenkins just said "drama". (Supp. Vol. 2 pgs. 51-52) Montgomery left to go to the store and when he returned Jenkins was gone. Officer Hamel arrived and Montgomery did not know where Jenkins was located. Hamel called Jenkins. (Supp. Vol. 2 pgs. 52-53)

State's Exhibit 1, a Smith County judgment for Assault - Family Violence was admitted and the trial ended for the day. (Supp. Vol. 2 pg. 31) No evidence presented by defense counsel. (Supp.Vol.2 pg. 62)

On October 14, 2014, the bench trial resumed and the State recalled Alissia Moore. Moore could not remember what happened on August 13, 2013; the day of the alleged assault. (Vol. 2 pg. 4) Moore did not remember the police showing up at her house. (Vol. 2 pg. 5) Moore did not remember speaking to officer Hamel. She did not remember a hole in the wall or a broken glass. (Vol. 2 pgs. 5-6) Moore did not remember calling the police. (Vol. 2 pg. 6) She remembered some things that happened that day but nothing related to the alleged assault. (Vol. 2 pgs. 7-9) Moore did not remember a glass being thrown. (Vol. 2 pg. 9) Moore provided an Affidavit of Non-Prosecution to Defendant's counsel on May 16, 2014. Her affidavit stated that she did not want to go forward with the case, did not intend for Jenkins to be arrested and did not intend for Jenkins to be charged with an offense. (Vol. 2 pg. 10) Moore did not state that Jenkins had not assaulted her; however, if she had "*known this was the case I would have put it in this affidavit.*" (emphasis added)

The State rested its case. Jenkins' counsel moved for an acquittal based on insufficient evidence to prove all the elements of the charge. The court questioned the parties, under the confrontation clause, could the fact finder rely on a hearsay

statement from someone other than the complainant to support the charge? (Vol. 2 pgs. 12-13) The State took the position that if the complainant was available to testify, then there was still an opportunity to confront the accuser. The Court denied the motion for directed verdict. However, the court asked counsel to brief the issue in regards to the Sixth Amendment Confrontation Clause and the evidence admitted before he could decide guilt innocence. (Vol. 2, pg. 13-15) On December 4, 2014, the court announced that there was sufficient evidence for a finding of guilt. The court could not rely on Alissia Moore's testimony and the court considered the hearsay statements of Moore's to the investigating officer were an exception to the hearsay rule. (Vol. 4, p. 2) A Pre-Sentence Investigation (PSI) was requested. The court set bond conditions for no contact with the Moore except to exchange her child and no possession of a firearm. (Vol. 4, pgs. 4-6)

On January 26, 2015, the sentencing hearing was held. Jenkins pled true to the punishment enhancement paragraph in the indictment. (Vol. 3 pgs. 5-6) No additions or corrections to the PSI were presented. The State called Mark French, the supervision officer charged with preparing the PSI on Jenkins. Jenkins asserted that he was still not guilty of the charge. Jenkins had previously been on probation and parole. French opined that Jenkins would not be successful on probation due to the nature of the charge and Jenkins previously been incarcerated for similar charges.

(Vol. 3 pgs. 8-9)

During cross examination, French admitted Jenkins had pled guilty for his previous cases but not in this case. The PSI report included support letters, including one from the alleged victim, Alissia Moore. (Vol. 3 pgs. 9-10) Jenkins had been working and his employer was happy with him. Jenkins had been able to support his children. (Vol. 3 pgs. 10)

The defense called Phillys Chapman, Jenkins mother. Chapman responded to theft allegations made by Cynthia Thomas referenced in the PSI. Chapman stated that she knew Jenkins had helped Thompson move when she left the state. Jenkins and another guy helped Chapman move her property to a storage unit in February 2014. (Vol. 3 pgs. 12-14) Cynthia Thomas called Chapman asking for her kennel and lawnmower. Thomas property was at Chapman's house. Thomas was more than welcome to come anytime and get her property but Thompson never came. (Vol. 3 pgs. 12-14) Phillys Chapman did not understand why Thomas left Jenkins in charge of "her stuff". When Chapman talked to Thomas, Chapman informed her again that her lawnmower and kennel were at her house and that she was welcome to come pick them up. Chapman testified that Jenkins was a good person although he had a little temper that had gotten better. (Vol. 3 pg. 18) Jenkins always worked and help around the house. Chapman stated that Jenkins knew right from wrong and was a

responsible person. (Vol. 3 pgs. 18-20)

Taurus Jenkins testified to explain the material in the PSI report. (Vol. 3 pgs. 24- 45) Jenkins completed his probation successfully for on his previous cases and his completed his two year TDCJ-sentence in 2009. Jenkins had not been in trouble since the present charge in 2013. (Vol. 3 pgs. 25- 26) Jenkins explained that he and another guy helped Cynthia Thomas move her property to a storage unit because her son would not help her.  Thomas was moving to North Carolina and needed to store her property. Jenkins stated that Thomas had given him, her daughter and other people some of her property that the landlord had placed on the road. Thomas gave Jenkins the kennel and the lawnmower. (Vol. 3 pg. 27) When Cynthia Thomas came back from North Carolina she wanted all of her stuff back.  All the unaccounted items were in the storage unit at that time. (Vol. 3 pgs. 27-31).  Jenkins supported Alicia Moore's child and had been in his life since he was one years old.  Jenkins obtained his welding certificate and had a good paying job.  (Vol.  3 pgs. 31-32)

During cross-examination, Jenkins stated that the gun he talked about in his text message was a pellet gun that Cynthia Thomas had given him. Jenkins never turned over the text messages to support his defense because Officer Jackson said that he was calling Cynthia Thomas' daughter to verify that she recovered her property. (Vol. 3 pgs. 32-33)

13

Jenkins denied ever hitting Alissia Moore. Jenkins stated the hole in the wall was already there. (Vol. 3 pg. 34) When asked about a Smith County assault charge in Smith County, he took blame for what he did and he completed his probation. Jenkins dropped out of school because he didn't have enough guidance and his father was locked up for murder since he was 9 or 10 years old. Jenkins' mother worked and raised him. Jenkins believed probation would be good for him. Even though Jenkins did not live with Alicia Moore, he still supported her son. (Vol. 3 pgs. 35-37)

The Court asked the Jenkins about a letter that he wrote were he stated "Angelina County not the same if it ain't about money. I don't make sense, what happened to loyal and committed in the judistrict system". Jenkins stated he was upset at the time he wrote the letter. (Vol. 3 pg. 37-39) Jenkins testified he was not present at the house when Moore talked to the police and he would not know what she had told them. (Vol. 3 pg. 40) Jenkins admitted that he threw a glass at Moore after she threw one at him. (Vol. 3 pg. 42)

Byron Coutee was called to testify. Byron is Jenkins cousin and they worked together. Byron was willing to be a mentor to Jenkins. (Vol. 3 pg. 43-46) The court found Jenkins guilty and assessed punishment of six (6) years in the Texas Department of Criminal Justice System - Institutional Division.

On March 25, 2015, a hearing on the Motion for New Trial was held. Jenkins

raised the issue of insufficient evidence and requested the court to read its docket sheet into the record. The court referenced a hearing on October 6, 2014 in addition to the record of trial. On November 18, 2014, the court sent a letter to the attorney's regarding his decision in the case. Jenkins' motion for directed verdict was denied. (Supp. Vol. 1)

## SUMMARY OF THE ARGUMENT

The trial court erred by considering the hearsay statements from Officer Hamel to support its finding of guilt. The best evidence is the testimony of an eye witness. In this case, Alissia Moore, the complainant and only witness, did not remember the events of August 13, 2013. Jenkins trial counsel made an oral Motion for Directed Verdict which was denied. Jenkins appellate counsel attempted to correct the error of the trial court by filing a Motion for New Trial and addressed the legal insufficiency of the evidence which was denied. The fact that the court considered the hearsay statements of Officer Hamel to support the finding of guilt was and egregious error and Jenkins is entitled, under the U.S. and Texas constitutions, to an acquittal.

A conviction should only stand on direct evidence from witnesses with personal knowledge. Hamel did not have personal knowledge and Malone, who had personal knowledge, did not remember any facts to support the conviction. It was not Jenkins fault that Malone could not remember the events. It is a problem for the State of

Texas in the sufficiency of their evidence in this case. Jenkins conviction should not stand under the law to have a conviction based on hearsay.

## APPELLANT'S POINT OF ERROR NUMBER ONE

**The Trial Court erred in its verdict. The evidence presented at trial is legally insufficient to sustain the conviction**

### Standard of Review – Insufficient Evidence

When reviewing the sufficiency of the evidence to support a conviction, the court views all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). In conducting a legal sufficiency analysis, the appellate court will "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (citations omitted). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Id.* The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). When the record on appeal supports conflicting

16

inferences, the court presumes that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778; *see also Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010).

**Application of the law to the facts of this case**

The State is required to prove beyond a reasonable doubt every element of the charged offense. *See Carrizales v. State*, 414 S.W.3d 737, 744 (Tex.Crim.App. 2013). The court measures the sufficiency of the evidence by the elements of the offense as defined in a hypothetically-correct jury charge. *Gollihar v. State*, 46 S.W.3d 243, 252-53 (Tex.Crim.App. 2001) Under the hypothetically-correct jury charge, Jenkins committed the offense of Assault – Family Violence if: (1) Taurus Jenkins, (2) intentionally, knowingly or recklessly (3) causes bodily injury to Alissia Monique Moore by breaking a glass over her head and (4) Moore was a family member as described by Section 71 of the Texas Family Code. TEX. PENAL CODE ANN. § 22.01(a). (Indictment, CR 18)

Jenkins was convicted of Assault –Family Violence based on the hearsay statements of Alissia Moore proffered by Officer Hamel reading from his offense

17

report. Alissia Moore (Moore) was present during the first two days of trial. Moore testified that she did not remember the events on August 13, 2013 when Officer Scott Hamel responded to an assault call. (Vol. 2 pgs. 5-9) Since Moore was available to testify and subject to cross-examination, it was error for the court to consider the hearsay statements of Moore from Officer Hamel. If Moore did not remember the events, then the State is left with no evidence. Additionally, Moore could not remember what happened on August 13, 2013. (Vol. 2 pg. 4) Moore did not remember the police showing up at her house. (Vol. 2 pg. 5) Moore did not remember speaking to Officer Hamel. She did not remember a hole in the wall or a broken glass. (Vol. 2 pgs. 5-6) Moore did not remember calling the police. (Vol. 2 pg. 6) Moore remembered some things that happened that day but nothing related to the assault. (Vol. 2 pgs. 7-9) Moore did not remember a glass being thrown. (Vol. 2 pg. 9)

Since Moore did not remember did not remember a hole in the wall or a broken glass or a glass being thrown. (Vol. 2 pgs. 5-6, 9) This is the sworn evidence testimonial evidence in the case. Officer Hamels testimony did not support the allegations in the indictment. Officer Hamels reading from his offense report, which supported the indictment, was inadmissible hearsay.

A declarant is considered to be unavailable as a witness if the declarant

testifies to not remembering the subject matter. Tex. Evid. R. 804(a)(3)  Under

Tex. Evid. R. 804(b)(1)(B), "The following are not excluded by the rule against

hearsay if the declarant is unavailable as a witness in  criminal case:

> (i)  was given as a witness at a trial or hearing of the current or a different proceeding; and
>
> (ii)  is now offered against a party who had an opportunity and similar motive to develop it by direct, cross-, or redirect examination; or
>
> (iii)  was taken in a deposition under - and is now offered in accordance with - chapter 39 of the Code of Criminal Procedure.

Moore was called as a State witness.  Moore was available during the trial, testified

and was subject to cross-examination.  Moore cannot be considered unavailable

under Rule 804(a).  It was error of the trial court to consider the hearsay statements

of Moore which the State had previously introduced through to Officer Hamel's

offense report.  The statements in the offense report did not fall within an

exception to the hearsay rule under Rule 804 so the statements were inadmissible.

The trial court had no sworn evidence from Moore to support its decision of

finding Jenkins guilty and it was reversible error to find Jenkins guilty.

## APPELLANT'S POINT OF ERROR NUMBER TWO

**The Trial Court erred in finding Jenkins guilty based on hearsay statements in violation of the Confrontation Clause of the U.S. Constitution**

*Standard of Review – Constitutional Confrontation Clause issue*

The proper standard of review on the issue before us is a hybrid one: both deferential and *de novo.* "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo." Wall v. State,* 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *see also Lilly v. Virginia,* 527 U.S. 116, 136, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999) (stating courts should independently review whether out-of-court statements violate the Confrontation Clause). *De novo* review is appropriate because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall,* 184 S.W.3d at 742-43. "On that question, trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation." *Id.* at 743.

The court questioned the parties, under the confrontation clause, could the fact finder rely on a hearsay statement from someone other than the complainant to support the charge? (Vol. 2 pgs. 12-13) The State took the position that if the complainant was available to testify, then there was still an opportunity to confront the accuser. The Court denied the motion for directed verdict. However, the court asked counsel to brief the issue in regards to the Sixth Amendment

Confrontation Clause and the evidence admitted before he could decide guilt innocence. (Vol. 2, pg. 13-15)  On December 4, 2014, the court announced that there was sufficient evidence for a finding of guilt.  The court could not rely on Alissia Moore's testimony and the court considered the hearsay statements of Moore's to the investigating officer were an exception to the hearsay rule. (Vol. 4)

The trial court erred in finding Jenkins guilty and considering the hearsay testimony of Officer Hamel to support his decision. Hamel did not see or observe the alleged crime.  Only Moore could testify as to the events and facts to support the charge. The fact that the State waited to take the case to trial for fourteen months after arrest and six months after arraignment should be held against the State.  The burden shifts to the State, as the proponent of Moore's hearsay statements, to demonstrate that it was admissible, notwithstanding the constitutional prohibition of testimony from witnesses against the accused whom he has been afforded no opportunity to confront in open court.

### *Applicable Law*

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington,* the Supreme Court held that it was a violation of the

Sixth Amendment to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. Generally speaking, a statement is "testimonial" if it is a solemn declaration made for the purpose of establishing some fact. *Id.,* 541 U.S. at 51, 124 S.Ct. at 1364. The *Crawford* Court chose to "leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* However, the Court identified certain classes of "core" statements which could be regarded as testimonial, including: (1) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and (2) statements taken by police officers "in the course of interrogations." *Id.,* 541 U.S. at 51-52, 124 S.Ct. at 1364. The Court noted that its use of the term "interrogation" in this context was "in its colloquial, rather than any technical legal sense." *Id.,* 541 U.S. at 53, 124 S.Ct. at 1365 n.4.

The following principles guide in determining whether statements are testimonial in nature: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary

questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Dixon v. State*, 244 S.W.3d 472, 482 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) The Supreme Court has provided additional guidance for determining whether an out of court statement contains testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2273-78, 165 L. Ed. 2d 224 (2006). The Court explained:

> Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. 126 S. Ct. at 2273-74.

In this case, Malone's hearsay statements to Hamel were testimonial and not made during an ongoing emergency. Taurus Jenkins was not present on the scene. Moore showed Hamel a hole in the wall where her head was pushed into. Moore identified a glass that she claimed she had been hit with. (Supp. Vol. 2. pg. 10) Hamel stated that he did not know what caused Moore's injuries, Hamel could not recall if the injury on Moore's head was from the wall or from the glass. (Supp. Vol. 2 pgs.12-13) Moore also had cuts on her hands. (Supp. Vol. 2 pg. 14) Hamel was not sure how Moore's injuries occurred; other than by Moore telling Hamel they were from the assault. (Supp. Vol. 2 pg. 14) Hamel read from his offense report that Moore had advised that

23

"Jenkins had grabbed the glass and smashed it over her head that cut her head and her hands" and Jenkins pushed her head into the sheetrock. (Supp. Vol. 2. pg. 15)

In *Davis,* the court held that statements made by a victim of domestic violence during a 9-1-1 call were not testimonial. 126 S. Ct. at 2277. In its analysis, the Court considered the following characteristics of the exchange: (1) the caller was describing events as they were actually happening, rather than past events, (2) any reasonable listener would recognize that the caller was facing an ongoing emergency, (3) the nature of the questions and answers, viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn what had happened in the past, and (4) the caller was frantically answering the 9-1-1 operator's questions over the telephone, in an environment that was not tranquil or safe. 126 S. Ct. at 2276-77. The Court noted that the initial interrogation conducted during a 9-1-1 call is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance. *Dixon v. State*, 244 S.W.3d 472, 481-82 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)

The trial court erred by considering the hearsay statements of Malone before she testified. The appellate court reviews the trial court's exclusion of testimony under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141,

24

153-54 (Tex. Crim. App. 2001). We will uphold the trial court's decision unless it lies outside the "zone of reasonable disagreement." *Id.* Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay statements are inadmissible except as provided by statute or other rule. TEX. R. EVID. 802. When a prior statement is not offered as primary evidence, but to impeach the witness's credibility, it is not hearsay. *Baldree v. State*, 248 S.W.3d 224, 230-31 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Rule 613 provides that a witness may be examined "concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed." TEX. R. EVID. 613(a). As a predicate, the witness must be told the contents of the statement, the person to whom it was made, and the time and place it was made. *Id.* The witness must be given an opportunity to explain or deny the statement. *Id.* If the witness unequivocally admits to having made the prior statement, extrinsic evidence will not be admitted. *Id.* This manner of impeachment was not followed an it was reversible error for the court to consider Malone's hearsay statements to Officer Hamel.

In this case, considering the above factors, Officer Hamel's hearsay statements of Malone was the only evidence to support the charge and Jenkins counsel did not have the benefit of Malone's testimony to question Hamel's veracity of accuracy of the statement at the time the hearsay statements were offered into evidence. Hamel did not observe the offense. Hamel's hearsay testimony was clearly cumulative of Malone who appeared in the trial at a later time. The absence of evidence from Malone corroborating or contradicting the Hamel's testimony on the material point of whether Jenkins caused Malone's injuries or she injured herself is a critical issue in the case. To allow the hearsay testimony of Malone was error and considering the hearsay statements to support the verdict is reversible error. Cross-examination was permitted but limited in this case. The overall State's case was weak and another factor that weighs in favor of Jenkins. Jenkins should not be convicted on hearsay rom an offense report. A conviction should only stand on direct evidence from witnesses with personal knowledge. Hamel did not have personal knowledge and Malone, who had personal knowledge, did not remember any facts to support the conviction. It was not Jenkins fault that Malone could not remember the events. It is a problem for the State of Texas in their evidence in this case. Therefore, Jenkins conviction cannot stand under the law to have a conviction based on hearsay.

*Invited Error*

Any confrontation error that might have occurred in this case was the product of the State's proffer of Officer Hamel's hearsay testimony of Moore's statements before Moore testified. Moore's later testimony was clear that she did not remember the events alleged in the indictment. The State "induced" admission of the hearsay evidence of Moore's statements by proffering statements from Officer Hamel's offense report. Only after Officer Hamel testified was Jenkins entitled to cross-examine Moore, who was present on two trial dates and called by the State. The State should be prohibited from securing a conviction on evidence that violated the Texas Rules of Evidence when the State was the party proffering the witnesses testimony to support a conviction.

The State chose to call Hamel before Moore. Jenkins did nothing to justify the invocation of any reasonable notion of estoppel or invited error of proffering inadmissible statements to the court. Once Jenkins lodged his objection to the sufficiency of evidence at the close of the State's case, the State argued that the hearsay testimony offered by Hamel was sufficient to support a conviction for a witness that could not remember any facts to support the charge. It appears that the State intentionally called Officer Hamel first to proffer Moore's statements to the fact finder and then called Moore who invoked her right to consult with an attorney; after being warned against making a false statement. Moore's subsequent testimony, as a witness for the State, was presented. Moore was not incompetent and available to testify. The

State proffered Moore's testimony that she did not remember any of the essential facts to support the elements for a conviction. Moore's truthful testimony was "I don't remember". If a witness does not remember, then the lack of evidence is placed on the State as the proponent of the testimony. Jenkins did nothing to delay the case or cause Moore to "not remember". The fact that the State elected to not prosecute the case for 14 months may be a factor in the witness not recalling the facts of the case. Jenkins should not be prejudiced with a conviction based on inadmissible evidence.

## APPELLANT'S POINT OF ERROR NUMBER THREE

**The Trial Court erred in finding the Appellant had been previously convicted of an offense under Chapter 19 of the Texas Penal Code**

The indictment stated that "the defendant had been previously convicted of an offense under Chapter 19 of the Texas Penal Code, against a member of the defendant's family, as described by Section 71 of the Texas Family Code, to wit: on the 21st day of March, 2005, in the County Court at Law No. 2 of Smith County, Texas in cause number 28641204." State's Exhibit 1, a Smith County judgment for Assault - Family Violence was admitted to prove the element of a prior conviction to enhance the charge from a misdemeanor to a felony. (Supp. Vol. 2 pg. 31) The indictment referenced Chapter 19 of the Texas Penal Code which involves murder, capital murder, manslaughter, or criminally negligent homicide. TEX. PENAL CODE 19.01-19.05. In order to enhance a misdemeanor assault charge to a felony

assault charge based on the evidence in this case, the State must plead and prove a violation of TEX. CODE CRIM. PROC Article 22.01(b)(2)(A) under Chapter 22. Jenkins prior conviction from Smith County was not for an offense under Chapter 19 but Chapter 22 of the Texas Penal Code. The court therefore reversibly erred in finding Jenkins guilty of a felony offense. If the appellate court finds sufficient evidence, then Jenkins should have only been convicted for a misdemeanor and the case should be reversed and remanded for a new punishment hearing.

## APPELLANT'S POINT OF ERROR NUMBER FOUR

**The Trial Court erred in denying Appellant's Motion for Directed Verdict**

### Standard of review on evidentiary rulings

A motion for directed verdict is an attack on the legal sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); *Rohrscheib v. State*, 934 S.W.2d 909, 910 (Tex. App.--Houston [1st Dist.] 1996, no pet.). When conducting a legal-sufficiency review, the court views the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Rohrscheib*, 934 S.W.2d at 910. Although a legal-sufficiency analysis entails a consideration of all evidence presented at trial, we may neither re-weigh the evidence nor substitute

our judgment for the jury's. *King*, 29 S.W.3d at 562. The trier of fact is the sole judge of the credibility of witnesses and may believe or disbelieve all or any part of a witness's testimony. *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.--Houston [1st Dist.] 1994, no pet.).

Appellate courts uphold the trial court's evidentiary rulings on appeal absent an "abuse of discretion." When it is clear that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion. In either event the appellate court should recognize that the trial court erred to admit the proffered evidence, and proceed to determine harmfulness under Tex. R. App. Pro. 44.2. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (opinion on rehearing).

**Argument and the law**

There was no evidence to support the conviction consistent with the fact that Moore could not remember the events. After the State rested, Jenkins' counsel moved for a Directed Verdict and acquittal based on insufficient evidence to prove all the elements of the charge. The court questioned the parties and ultimately denied the defense motion. The court should have granted the motion due to a lack of sufficient testimonial evidence to support the charge. (Vol. 2 pgs. 12-13)

Additionally, it is clear that Moore did not want to prosecute the crimes due to no

assault having occurred by Jenkins. Moore provided an Affidavit of Non-Prosecution to Defendant's counsel on May 16, 2014. Her affidavit stated that she did not want to go forward with the case, did not intend for Jenkins to be arrested and did not intend for

Jenkins to be charged with an offense. (Vol. 2 pg. 10) Moore did not state that Jenkins had not assaulted her; however, if she had "known this was the case I would have put it in this affidavit." Moore testified that she would have admitted that Jenkins did not assault her if she needed to provide that detail in her request that the charges be dismissed.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Appellant, respectfully prays that this Honorable Court of Appeals grant all relief sought, reverse his sentence and grant him a new punishment hearing and such other relief to which it may be entitled.

Respectfully submitted,

/S/ *Albert J. Charanza, Jr.*
Albert J. Charanza Jr.
Charanza Law Office, P.C.
P.O. Box 1825
Lufkin, Texas 75902
936/634-8568 (office)
936/634-0306 (fax)
State Bar No. 00783820
ATTORNEY FOR THE APPELLANT

31

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing Brief for The Appellant was served upon State's attorney, P.O. Box 908, Lufkin, TX 75902 on October 6, 2015.

/S/ *Albert J. Charanza, Jr.*
Albert J. Charanza Jr.

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this document contains 6,146 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font and the footnote text is in 12 point font.

/S/ *Albert J. Charanza, Jr.*
Albert J. Charanza Jr.