# NO. 12-19-00060-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JUAN ALBERTO QUIROGA,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Juan Alberto Quiroga appeals his conviction for aggravated assault against a public servant. Appellant raises five issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated assault against a public servant and pleaded "not guilty." The matter proceeded to a jury trial. At the trial's conclusion, the jury found Appellant "guilty" as charged. Following a trial on punishment, the jury assessed Appellant's punishment at imprisonment for fifty years. The trial court sentenced Appellant accordingly, and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. In his second issue, he argues that the trial court erred in denying his motion for directed verdict on that basis.

**Standard of Review**

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.***

## Discussion

To meet its burden of proof that Appellant committed the charged offense, the State was required to prove that he intentionally or knowingly threatened another with imminent bodily injury, used or exhibited a deadly weapon during the commission of the assault, and did so against a person he knew to be a public servant while that person lawfully was discharging an official duty. *See* Tex. Penal Code Ann. §§ 22.01(a)(2) (West Supp. 2019), 22.02(a)(2), (b)(2)(B) (West 2019).

### *The Evidence*

At trial, Jeremy Robinson testified that he had worked for Ricardo Pineda[2] doing handyman-type jobs and dealing methamphetamine for between six and eight weeks prior to the incident underlying the case at hand. Robinson testified that on the morning of March 21, 2016, he drove Pineda in his black Nissan Altima to an RV park where they and others attended a cookout. Robinson met Appellant for the first time at the RV park that day. He stated that while inside a shop building located at the RV park, he observed between seven and ten firearms, some of which he personally retrieved from a car outside. Robinson testified that when a group of people later left the shop, Appellant had a .38 caliber revolver and an AK-47 assault rifle while Pineda had a .40 caliber pistol and an AR-15 assault rifle. He further testified that he, Appellant, and Pineda left the RV park in his black Nissan Altima, while others left in a Mazda SUV. Robinson was driving the car, Pineda was in the front, passenger seat, and Appellant was in the back seat. He explained that after police attempted to stop the vehicle, on Pineda's orders, he attempted to elude them and did so while driving in excess of one hundred miles per hour. Robinson testified that Appellant and Pineda began firing at the pursuing vehicle with their respective assault rifles and that, at some point, Appellant stated that he needed "another clip."

---

[2] According to the testimony of other witnesses, Pineda was the subject of a joint investigation between the United States Drug Enforcement Administration and the Smith County Sheriff's Department.

Robinson succeeded in eluding officers and parked the Altima behind a metal building on a back road, where they left the vehicle, entered a wooded area, and waited in a shed by a pond until they felt it was safe to leave. Robinson identified Appellant during his trial testimony as one of the people who fired at pursuing officers from the Nissan Altima.

Bradley Roberts testified that he came to the RV park on the day in question to pay a $2,000 debt he owed to Pineda for drugs. He further testified that he attended the cookout at the RV park and introduced himself to Appellant inside the shop building. Roberts stated that he saw firearms inside the shop and observed Appellant handling a pistol and an assault rifle. Roberts wanted to conclude his business with Pineda and leave, but Pineda wanted to collect money from someone and meet at a gas station beforehand and asked Roberts to give another person a ride to the gas station. Roberts testified that he agreed to drive the person to the gas station but had no intention of joining Pineda and others in their collection efforts. He further testified that Appellant left the RV park in the Altima with Pineda and Robinson. He stated that he left the RV park as a passenger in a Mazda SUV, observed the Altima make a U-turn as it was being chased by police, and heard gunshots. Roberts identified Appellant as the man he met at the RV park that day, who he observed getting into the black Nissan Altima before they left the RV park.

Smith County Sheriff's Detective Eric Whitaker testified that he was engaged in surveillance in connection with the Pineda investigation on the day in question. He and other officers used a pole camera to surveil the RV park that day. At trial, Whitaker was shown video and photographic stills captured by the pole camera. From those photographs, Whitaker identified Appellant[3] as one of the individuals present at the gathering and noted, as a point of distinction, that Appellant, earlier that day, was carrying a pink backpack and, later, was wearing a brown Carhart jacket. Whitaker also identified Appellant in a photograph from a security camera at a nearby hotel where Pineda also was under surveillance. Whitaker testified that he observed Appellant talking to Robinson at the RV park. Whitaker testified that when people began to leave the RV park it was after dark, but it was easy to identify which person got into what car. He observed Appellant, who no longer was carrying the pink backpack, but who still was wearing the Carhart jacket, get into the back seat of Robinson's black Nissan Altima. He

---

[3] Whitaker stated that he and other officers compared "book-in" photographs and Facebook photographs to match Appellant's identity with the surveillance footage.

further stated that he and another officer followed the Altima and a Mazda SUV until the Altima turned off Highway 64, at which point they continued to follow the Mazda. According to Whitaker, from the time the Altima left the RV park until it turned off Highway 64, no one else got into or out of the car. Whitaker testified that he ultimately performed a traffic stop on the Mazda and that a search of the vehicle revealed a pink backpack,[4] guns, and drugs. He further testified that during the search, he overheard a radio call from Smith County Sheriff's Deputy Corey Cameron reporting "shots fired."

Cameron testified that he is a certified peace officer, who, on the day in question, was assisting in the Pineda investigation. He further testified that when the Nissan Altima left the RV park, he followed it in a Smith County Sheriff's Department Chevrolet Tahoe with distinct markings on it. Cameron followed the Altima eastward on Highway 64 and, as he continued eastbound, he observed the Altima turn off of Highway 64, cut through a gas station parking lot without stopping, and turn onto Thompson Road. He explained that this action on the driver's part violated Texas law and, as a result, he made a U-turn and followed the vehicle on Thompson Road. He was behind the Altima as it approached the intersection of Thompson Road and County Road 46, at which point he observed that the driver failed to signal a left turn over an adequate distance of travel and, as he sought to perform a traffic stop in response, the Altima accelerated away from him on County Road 46. He testified that the ensuing high-speed pursuit of the Altima reached speeds in excess of one hundred miles per hour. Cameron stated that after some time, he saw the Altima's brake lights illuminate and he observed gunshots being fired from both the driver's and passenger's side of the vehicle. The State admitted the video from Cameron's vehicle which depicts sparks from bullets' striking the roadway in front of Cameron's police vehicle. According to Cameron, he counted between four and five shots fired from the driver's side of the vehicle and felt threatened as a result, but he persisted in his pursuit of the Altima until his vehicle no longer safely was operable. Cameron further stated that he exited the vehicle and inspected the engine compartment to assess the problem, wherein he observed that the radiator hose, the radiator, and the transmission cooler, had been penetrated and coolant had discharged as a result. Cameron also observed a hole near the steering column in front of his seated position, and a bullet fragment later was discovered inside the vehicle in the driver's

---

[4] Smith County Patrol Deputy Justin Eakin testified that the pink backpack recovered from the Mazda contained ammunition, including two hundred rounds of .223 caliber ammunition for an AR-15, as well as .38 caliber ammunition and .45 caliber ammunition.

footwell inches from where he had been sitting during the pursuit. Cameron testified that he believed that bullet could have killed him. And though he acknowledged he was wearing a ballistics-resistant vest, he stated that it was not the type of vest designed to stop a round fired from a rifle.

*Corroboration of Accomplice Testimony*

Appellant first argues that the testimony of unspecified accomplices was not sufficiently corroborated to satisfy the "accomplice-witness rule" found in Texas Code of Criminal Procedure, Article 38.14. Article 38.14 states, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." ***Brown v. State***, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing ***Paredes v. State***, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004)); ***Turner v. State***, 571 S.W.3d 283, 287 n.6 (Tex. App.–Texarkana 2019, pet. ref'd). It is undisputed that Robinson, who drove the Altima, is an accomplice as a matter of law. *See **Paredes***, 129 S.W.3d at 536 ("An accomplice as a matter of law is one who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense").

When evaluating the sufficiency of corroborating evidence under Article 38.14, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." ***Solomon v. State***, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The tends-to-connect standard does not present a high threshold because the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." ***Id.***; *see **Cantelon v. State***, 85 S.W.3d 457, 461 (Tex. App.–Austin 2002, no pet.). "Rather, the evidence must simply link the accused in some way to the commission of the crime." ***Malone v. State***, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

Such evidence "is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." ***Smith v. State***, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing ***Simmons v. State***, 282 S.W.3d 504, 508 (Tex.

6

Crim. App. 2009)). The Texas Court of Criminal Appeals has expounded on the concept as follows:

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (citations omitted). In determining whether the nonaccomplice evidence tends to connect the defendant to the commission of the offense, "we view the evidence in the light most favorable to the jury's verdict." *Brown*, 270 S.W.3d at 567.

Viewed in the light most favorable to the jury's verdict, the nonaccomplice evidence in this case established that (1) Appellant was at the RV park with Robinson and Pineda on the day in question, (2) Appellant was wearing a pink backpack and brown Carhart jacket during that time, (3) after dark, Pineda and Appellant, who no longer was wearing the backpack, but who still was wearing the Carhart jacket, clearly were visible as they got into Robinson's black Nissan Altima, (4) Appellant got into the back seat of the Altima, (5) from the time the Altima left the RV park until it cut through the gas station parking lot and proceeded on Thompson Road, no one got into or out of the vehicle, (6) Cameron followed the Altima onto Thompson Road and engaged in a high speed pursuit of the Altima with his marked Sheriff's Department vehicle's beacon lights activated, (7) two gunmen, one on each side of the Nissan Altima, fired multiple shots at Cameron's patrol vehicle, ultimately disabling it, (8) Cameron counted between four and five shots fired from the driver's side of the Altima, which video evidence demonstrated still was driving at speed, (9) one bullet pierced the vehicle cabin near the steering column, and a bullet fragment was found in the driver's side footwell inches from where Cameron was seated, and (10) a pink backpack containing ammunition, including two hundred rounds of .223 caliber ammunition for an AR-15, as well as .38 caliber ammunition and .45 caliber ammunition, was located during the search of the Mazda SUV.

We reiterate that the "tends-to-connect" standard does not present a high threshold. *See Solomon*, 49 S.W.3d at 361. Here, although Cameron could not positively identify Appellant as

one of the men who shot at him, he was unwavering in his testimony that shots were being fired from both sides of the vehicle. Whitaker's testimony[5] established that Appellant was in the back seat of the Altima and Appellant and Pineda were the vehicle's only other occupants from the time it left the RV park until the time it turned onto Thompson Road. The video footage from Cameron's vehicle supports the conclusion that no one entered or exited the vehicle from that point until two of its occupants opened fire. Moreover, the video footage from Cameron's vehicle demonstrates that the Nissan Altima still was traveling at speed when shots were fired at Cameron. Thus, a jury rationally could determine that the person firing from the driver's side of the vehicle was the back seat passenger since the vehicle appeared to be under the driver's control. *Cf. Turner*, 571 S.W.3d at 288 (citing *Cooper v. State*, 631 S.W.2d 508, 510 (Tex. Crim. App. 1982), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999)) (less-than-positive identification may be sufficient to corroborate accomplice witness testimony). Thus, we conclude, based on the totality of the nonaccomplice testimony, that a rational juror could find that such evidence tends to connect Appellant to the offense. *See Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988) (combined cumulative weight of the incriminating evidence furnished by nonaccomplice witnesses which tends to connect the accused with commission of offense satisfies test).

### *Additional Testimony and the Sufficiency of the Evidence*

In addition to Whitaker's and Cameron's respective testimonies, the jury was able to consider, among other evidence, the respective testimonies of Robinson and Roberts.[6] Robinson's testimony establishes that when they left the RV park shop later that day, Appellant had a .38 caliber revolver and an AK-47 assault rifle, Pineda had a .40 caliber pistol and an AR-15 assault rifle, and he, Appellant, and Pineda left the RV park in his black Nissan Altima. Robinson also established that he was driving the car, Pineda was in the front, passenger seat, and Appellant was in the back seat. Finally, he testified that he attempted to elude officers at high speed and Appellant and Pineda began firing at the pursuing vehicle with their respective

---

[5] In addition to Whitaker's in-court identification of Appellant, the jury also was able to view the surveillance photographs of Appellant and compare them to Appellant as they observed him at trial. *See Perales v. State*, No. 02-13-00458-CR, 2014 WL 3778275, at *2 (Tex. App.–Fort Worth July 31, 2014, no pet.) (mem. op., not designated for publication) (jury could compare surveillance video with in-court appearance to determine identity).

[6] As set forth previously, Appellant does not identify the accomplice(s) in conjunction with his first two issues. Whether Roberts is an accomplice is addressed in a separate issue. In our analysis of the sufficiency of the evidence, we do not rely on Roberts's testimony to corroborate Robinson's testimony.

assault rifles. Moreover, Roberts testified that he saw firearms inside the shop and observed Appellant handling a pistol and an assault rifle. He also testified that Appellant left the RV park in the Nissan Altima with Robinson and Pineda.

Based on our review of the record, we conclude that there was ample evidence to permit the jury to find beyond a reasonable doubt that Appellant intentionally or knowingly threatened Cameron with imminent bodily injury, used or exhibited a firearm during the commission of the assault, and did so against a person Appellant knew to be a public servant while that person lawfully was discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment. Appellant's first and second issues are overruled.

### ACCOMPLICE WITNESS INSTRUCTION

In his third issue, Appellant argues that the trial court abused its discretion by not providing in its charge an accomplice-witness instruction with regard to Robinson and Roberts.

### Standard of Review and Governing Law

The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. ***Oursbourn v. State***, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008). Because the corroboration of accomplice-witness testimony is required before a conviction can stand, the jury must be instructed accordingly, but the particular instruction that must be given depends on the circumstances of each case. *See **Zamora v. State***, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013).

A proper accomplice-witness instruction informs the jury either that a witness is an accomplice as a matter of law or that he is an accomplice as a matter of fact. ***Cocke v. State***, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or "when the evidence clearly shows that the witness could have been so charged." ***Zamora***, 411 S.W.3d at 510. For a witness who is an accomplice as a matter of law, the trial court must instruct the jury that the witness is an accomplice and that his testimony must be corroborated. *See **id.*** In contrast, when the evidence presented by the parties as to the witness's complicity is conflicting or inconclusive, the trial court must instruct the jury to (1) decide whether the witness

is an accomplice as a matter of fact and (2) apply the corroboration requirement, but only if it first has determined that the witness is an accomplice. *See id.*

Regardless of whether it identifies an accomplice as a matter of law or as a matter of fact, the jury instructions also must explain the definition of an accomplice, which is someone who, under the evidence, could have been charged with the same or lesser-included offense as that with which the defendant was charged. *Id.* Stated another way, an accomplice as an individual who "participates with a defendant before, during, or after the commission of the crime," "acts with the requisite culpable mental state," and performs an "affirmative act that promotes the commission of the offense with which the defendant is charged." *Id.* Moreover, a witness is not an accomplice witness merely because he knew of the offense and did not disclose it, or even if he concealed it. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness. *Id.* And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness. *Id.* In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law. *Id.*

**Discussion**

Initially, we note that despite Appellant's assertions to the contrary, the trial court properly instructed the jury that Robinson is an accomplice and that his testimony must be corroborated. With regard to Roberts, the trial court denied Appellant's request for an accomplice-witness instruction.

The record reflects that Roberts went to the RV park on the day in question to pay a drug debt he owed to Pineda. While there, he met Appellant and observed several firearms in the shop building located at the RV park. He testified that he overheard Pineda announce his intent to make collections of money owed to him and was aware that Pineda sometimes used violence to collect debts. But Roberts also testified that he had no intention of helping Pineda collect debts and only was going to drive another individual to a nearby gas station. There is no evidence in the record that Roberts took any affirmative act to assist Appellant in the commission of aggravated assault against a public servant or any lesser included offense thereto. As a result, we conclude that the record does not support that he is an accomplice. *See Druery*,

225 S.W.3d at 498; *see, e.g.*, **Kunkle v. State**, 771 S.W.2d 435, 441 (Tex. Crim. App. 1986) (witness not accomplice as matter of law or matter of fact in capital murder trial even though he knew about robberies others planned to commit but did not protest their commission, discussed robberies and was "for it," wanted to know how much money was obtained after one robbery, and knew money obtained after murder was used to buy provisions for lake outing, which he attended). Therefore, we hold that the trial court did not err in declining to give an accomplice-witness instruction with regard to Roberts. Appellant's third issue is overruled.

### ADMISSIBILITY OF EXPERT TESTIMONY

In his fourth issue, Appellant argues that the trial court abused its discretion in refusing to admit testimony proffered by his eyewitness-identification expert, Dr. Roy Malpass.

## Standard of Review and Governing Law

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. **Davis v. State**, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); **Russeau v. State**, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009).

Admission of expert testimony is governed by Texas Rule of Evidence 702, which states as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702; *see* **Tillman v. State**, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); **Morales v. State**, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000).

For scientific expert testimony to be admissible under this rule, the party offering it must demonstrate by clear and convincing evidence that such testimony "is sufficiently reliable and relevant to help the jury in reaching accurate results." **Kelly v. State**, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). More specifically, the proponent must prove that (1) the testimony is based on a reliable scientific foundation and (2) it is relevant to the issues in the case. *See* **Hartman v. State**, 946 S.W.2d 60, 62 n. 4 (Tex. Crim. App. 1997); **Jordan v. State**, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996).

The focus of the reliability analysis is to determine whether the evidence has its basis in sound scientific methodology such that testimony about "junk science" is weeded out. **Jordan**,

11

928 S.W.2d at 555. Expert testimony in the field of psychology pertaining to the reliability of eyewitness identifications is a "soft science." *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Consequently, to establish its reliability, the proponent must establish that (1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *Id.*; *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999).

Relevance is "a looser notion than reliability" and is "a simpler, more straight-forward matter to establish." *Tillman*, 354 S.W.3d at 438; *Jordan*, 928 S.W.2d at 555. The relevance inquiry is whether evidence "will assist the trier of fact and is sufficiently tied to the facts of the case." *Tillman*, 354 S.W.3d at 438. Hence, to be relevant, the expert "must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony." *Id.* This commonly is referred to as the "fit" requirement between the subject matter at issue and the expert's familiarity therewith. *See Vela v. State*, 209 S.W.3d 128, 133 (Tex. Crim. App. 2006). Put another way, the issue is whether the expert's proffered testimony takes into account enough of the pertinent facts to be of assistance to the trier of fact on a fact in issue. *See id.* Here, the trial court excluded Malpass's testimony because it failed to meet the "fit" requirement.

## Discussion

During the "gatekeeping" hearing,[7] Malpass stated that he reviewed portions of the discovery dealing primarily with the identification of Appellant by Roberts and Robinson in a Facebook photograph. He further stated that the opinion he intended to offer at trial was that, "as kind of a blanket policy, if you're going to show photographs to a witness, that should be a properly-developed photo spread." He ultimately agreed with the prosecuting attorney's description of his proffered testimony as "hypotheticals and generalities, nothing case specific."

Expert testimony on general principles of eyewitness identification or suggesting that one identification procedure is preferable to another is akin to "educational material for the jury, which is insufficient to demonstrate that the scientific principles will assist the trier of fact . . . or are sufficiently tied to the pertinent facts of the case." *Baldree v. State*, 248 S.W.3d 224, 230 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd). Malpass acknowledged that he was not

---

[7] *See* TEX. R. EVID. 705(b).

12

prepared to offer an opinion that any identification used in the instant case was unreliable. Rather, he stated that his perception of what he was expected to discuss was what, in his opinion, are "proper procedures," why they are "preferred," and that he would leave it to the attorneys to show how his opinions relate to the specifics of the case. *See id.*

Furthermore, the identifying witnesses in this case, Roberts and Robinson, each were co-defendants, and Robinson also was Appellant's accomplice. Each witness testified that he met Appellant on the day in question before the aggravated assault that is the subject of the instant case occurred. *See Deason v. State*, 84 S.W.3d 793, 797 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) (holding that an eyewitness-identification expert's testimony is of no assistance to jury on issue of misidentification where identifying witness and appellant were acquainted before crime at issue took place).

In any event, Malpass acknowledged that he had not conducted any studies or authored any peer-reviewed articles dealing with the reliability of accomplice or co-defendant identifications in forming his opinion. He noted that "some literature" existed on co-defendant identification, but he did not offer specific information regarding such literature during the hearing and stated that such literature did not form the basis for his opinion in this case. *See Nenno*, 970 S.W.2d at 561 (to establish its reliability, proponent must establish, among other things, that expert's testimony properly relies upon or utilizes principles involved in that field).

Moreover, as it pertained to his expertise, he defined an "eyewitness" as "a person who has observed a criminal event perpetrated by human beings and who could reasonably be expected to be able to say who - - or to identify a person as being the person who committed the offense." He then acknowledged that a person who did not specifically view the crime would not qualify as an "eyewitness." Considering Malpass's definition, we reiterate that Roberts was not an eyewitness to the charged offense since he was riding in the Mazda SUV, which took a divergent route from the Altima before the aggravated assault against Cameron took place. Further still, Malpass explained that, in the context of eyewitness identification, eyewitnesses typically include bystanders or victims and that there is a point of demarcation somewhere between such persons and a person related to the crime where the person no longer could be considered an eyewitness. However, he did not elaborate about where that point of demarcation might lie.

In sum, the trial court was able to consider Malpass's description of his testimony "as kind of a blanket policy, if you're going to show photographs to a witness, that should be a properly-developed photo spread" and "nothing case specific." *See **Baldree***, 248 S.W.3d at 230. Further, assuming that eyewitness-identification expert testimony is helpful to a jury in a situation where the witnesses were acquainted with Appellant before the crime at issue, Malpass's proffered testimony was not based on any studies he conducted or identifiable peer-reviewed literature specifically related to co-defendant or accomplice identification procedures. *See **Vela***, 209 S.W.3d at 136 (trial judge need not admit opinion evidence which is connected to existing data only by *ipse dixit* of expert and may conclude that there simply is too great of an analytical gap between data and opinion proffered). And lastly, Malpass's stated definition of the term "eyewitness," is inapplicable to Roberts, who was not present at the scene of the crime, and, if it is at all applicable to Robinson, who is Appellant's accomplice, it only is tenuously so.

Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible. *Id.* at 134. Thus, based on our review of Malpass's statements in the gatekeeping hearing, we conclude that the trial court's ruling that Malpass's proffered testimony failed to meet the "fit" requirement did not fall outside the zone of reasonable disagreement. *See id.* at 133; *see also **Davis***, 329 S.W.3d at 813–14. Therefore, we hold that the trial court did not abuse its discretion in refusing to admit Malpass's expert testimony. Appellant's fourth issue is overruled.

## CONFRONTATION CLAUSE

In his fifth issue, Appellant argues that the trial court abused its discretion by permitting testimonial statements from an absent witness to be admitted in violation of his rights under the Sixth Amendment's Confrontation Clause.

The witness to whom Appellant refers is Michael Gaona, who was granted testimonial immunity by the trial court. Before Gaona was called to the witness stand, Appellant objected under Texas Rule of Evidence 403 to "any testimony, especially with respect to him invoking his Fifth Amendment right in front of the jury." The trial court overruled Appellant's objection, and Appellant did not ask for a running objection. Subsequently, the State asked Gaona, "Do you remember telling Officer Whitaker that Juan Quiroga, your cousin, told you that he shot at the officers that night?" At that time, Appellant objected, stating, "Article I, Section 10, Sixth

Amendment, as well as a **Crawford** issue." The trial court overruled his objection. Appellant requested a limiting instruction, which the trial court gave at the conclusion of Gaona's testimony. Appellant also moved for a mistrial, which the trial court denied.

If a witness has been granted immunity and has no valid basis for refusing to testify, it is constitutionally permissible and not unfairly prejudicial for the state to call that witness, knowing he will assert a nonexistent Fifth Amendment privilege before the jury. *See* **Coffey v. State**, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990). Since Gaona was granted testimonial immunity by the trial court, the State could call him as a witness, knowing he would assert his nonexistent Fifth Amendment privilege. *See* ***id.***

But while the act of calling a witness to the stand in such circumstances is not error, it could result in unfair prejudice in violation of Rule 403 if the State "asked the witness a series of damaging questions in such a way as to invite the jury to assume that the answers to each question would have been in the affirmative." *Id.* at 179 n. 6; *see also* TEX. R. EVID. 403. However, Appellant only complains of a single question on appeal, did not make a running objection after his initial, wholesale Rule 403 objection was overruled, and did not make a contemporaneous Rule 403 objection in response to this question. *See* TEX. R. APP. P. 33.1(a).

Instead, Appellant contends that the question at issue constituted testimonial evidence admitted in violation of the Confrontation Clause. However, questions proffered to a witness by counsel are not evidence. *Cf.* **Wells v. State**, 730 S.W.2d 782, 787 (Tex. App.–Dallas 1987), *pet. ref'd*, 810 S.W. 2d 179 (Tex. Crim. App. 1990). But even if the prosecuting attorney's statement could be considered to be testimony, the trial court gave the jury the following limiting instruction:

> Ladies and gentlemen, questions by the prosecutor – the questions by the prosecutor is not to be considered as evidence. As I think you're well aware, evidence comes in only from witnesses' answers from the witness stand before you. The prosecutor's question, what's in the question, is not to be considered as evidence.

The denial of a motion for mistrial is reviewed under an abuse of discretion standard. **Gamboa v. State**, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Furthermore, instructions to the jury generally are considered sufficient to cure improprieties that occur during trial, and we generally presume that a jury will follow the judge's instructions. *Id.* Based on our review of the record, there is nothing that suggests that the prosecuting attorney's question to Gaona was of

15

such a nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict. *Cf. id.* Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion for mistrial. Appellant's fifth issue is overruled.

## DISPOSITION

Having overruled Appellant's first, second, third, fourth, and fifth issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 9, 2020

NO. 12-19-00060-CR

**JUAN ALBERTO QUIROGA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0884-16)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*